**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

− − − − − − − − − − − − − − − − − − —— − − − − −X

Safani Gallery, Inc.,                                    :

                        Plaintiff,     :       Case No. 19-cv-10507

              -against-                 :

The Italian Republic,                               :

                 Defendant.       :

                                  :

                                  :

                                  :

− − − − − − − − − − − − − − − − − − − − − − −X

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO ADD PARTY-DEFENDANT [ECF #36-37]**

 

Leila A. Amineddoleh
Polina Ivko
Amineddoleh & Associates LLC
43 West 43rd Street, Suite 171
New York, NY 10036
Attorneys for Defendant,
The Italian Republic

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND BACKGROUND ...................................................................................1

ANALYSIS.....................................................................................................................................3

    1.  Plaintiff's arguments concerning futility are themselves an exercise in futility.................3

        a.  Plaintiff cannot fulfill the takings and international law violation requirements of the expropriation exception so this Court need not reach the commercial activity nexus analysis; therefore, adding MiBACT to meet the final requirement of the expropriation exception is futile ...................................................................................3

        b.  Even if this Court were to reach the commercial activity nexus requirement in its analysis, adding MiBACT would not overcome the deficiencies in Plaintiff's expropriation claim for three reasons: (1) MiBACT must be treated as the State itself under the FSIA; (2) there was no commercial nexus; and (3) Plaintiff's claims against MiBACT are contingent upon the occurrence of a future event...................................6

          i.  MiBACT must be treated as the State itself under FSIA.......................................7

          ii.  There was no commercial nexus in the instant case, only communication to law enforcement authorities.........................................................................................12

          iii.  Jurisdiction cannot be invoked by the possibility of some future event/contingency ...................................................................................................12

    2.  Leave to Amend is not freely given in all circumstances, and should be denied here ......15

        a.  Leave to amend is not freely given in situations in which there is bad faith...............15

        b.  Leave to amend and jurisdictional discovery should not be granted when the leave is needed solely to correct Plaintiff's mistake and lack of understanding......................19

        c.  Plaintiff was provided with notice from this Court that its Amended Complaint would likely be the only opportunity to amend its Complaint...............................................24

        d.  Allowing another amendment stands in direct contravention to the FSIA's purpose.24

CONCLUSION..............................................................................................................................25

# TABLE OF AUTHORITIES

**CASES:**

*Aboutaam v. L'Office Federale de la Culture de la Fed. Suisse,* No. 1:18-cv-08248 (RA), 2019 WL 4640083 (S.D.N.Y. 2019)....................................................................................4, 6

*Acadia Tech., Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006) ......................................4

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir.1995) .........................................................19

*Africa Growth Corp. v. Republic of Angola*, No. CV 17-2469 (BAH), 2019 WL 3253367 (D.D.C. July 19, 2019), *appeal dismissed*, No. 19-7090, 2019 WL 6218805 (D.C. Cir. Oct. 23, 2019) ..................................................................................................................................14

*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016) ...................................21

*Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193 (2d Cir. 2016)............................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................14

*Assam v. Deer Park Spring Water*, 163 F.R.D. 400 (E.D.N.Y. 1995)....................................15

*Barnet v. Min. of Culture & Sports of the Hellenic Rep.*, 961 F.3d 193 (2d Cir. 2020)........................................................................1, 9, 10, 12, 19

*Benefitvision Inc. v. Gentiva Health Services, Inc.*, No. 09 CV 473, 2015 WL 1034543 (E.D.N.Y. Feb. 9, 2015).........................................................................................................17

*Bolivarian Rep. of Venezuela v. Helmerich & Payne Intl. Drilling Co.*, 137 S. Ct. 1312 (2017)..............................................................................................................................3, 4, 25

*Chettri v. Nepal Bangladesh Bank Ltd.*, 834 F.3d 50 (2d Cir. 2016) .............................5, 6, 25

*Chettri v. Nepal Bangladesh Bank Ltd.*, 10-CV-8470 (PGG), 2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014), *aff'd* 834 F.3d 50 (2d Cir. 2016)......................................................................4

*Crist v. Rep. of Turkey*, 995 F. Supp. 5 (D.D.C 1998)......................................................14, 15

*EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) ............................................25

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172 (2d Cir. 1998)...................18

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................................19

*Garb v. Rep. of Poland*, 207 F.Supp.2d 16 (E.D.N.Y. 2003) .................................................9

*Garb v. Rep. of Poland*, 440 F. 3d 579 (2d Cir. 2006) ......................................................7, 10

*Gosain v. State Bank of India*, 689 F.Supp.2d 571 (S.D.N.Y. 2010); *affirmed in part* 414 Fed. Appx. 311, (2d Cir. 2011) ...................................................................................................20

*Guevara v. Rep. of Peru*, 608 F.3d 1297 (11th Cir. 2010).........................................................6

*Hilsenrath v. Swiss Confederation*, No. C 07-02782 WHA, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F. App'x 314 (9th Cir. 2010).........................................................6

*Hernandez v. BMNY Contracting Corp.*, No. 17 CIV. 9375 (GBD), 2019 WL 418498 (S.D.N.Y. Jan. 17, 2019)......................................................................................................16, 20

*Howe v. Embassy of Italy*, 68 F.Supp.3d 26 (D.D.C. 2014) ....................................................7

*In re Commodity Exch., Inc. v. Silver Futures & Options Trading Litig.*, No. 11 Md. 2213 (RPP), 2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013), *aff'd* 560 F.App'x 84 (2d Cir. 2014)..20

*In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) .................16

*LaLoup v. United States*, 29 F.Supp.3d 530 (E.D. Pa. 2014) ............................................11, 12

*Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001) ...............................................10

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ...............................16, 17

*MMA Consultants 1, Inc. v. Rep. of Peru*, 245 F.Supp.3d 486 (S.D.N.Y. 2017) ....................18

*MOL, Inc. v. Peoples Rep. of Bangladesh*, 736 F.2d 1326 (9th Cir. 1984) .............................11

*Mortimer Off Shore Servs. v. Fed. Rep. of Germany*, 615 F.3d 97 (2d Cir. 2010).................14

*NML Capital, Ltd. v. Space Exploration Technologies Corp.*, 2015 WL 1334291 (C.D. Cal. 2015) ..........................................................................................................................................7

*O'Connell Mach. Co. v. M.V. "Americana,"* 734 F.2d 115 (2d Cir. 1984) .............................7
*Oneida Indian Nation of N.Y. State v. County of Oneida*, 199 FRD 61 (N.D.N.Y. 2000) ......20

*Orkin v. Swiss Confederation*, 770 F.Supp.2d 612 (S.D.N.Y. 2011), *aff'd*, 444 Fed. Appx. 469 (2d Cir. 2011)..........................................................................................................6, 18, 24

*Panther Partners Inc. v. Ikanos Commc'ns Inc.*, 681 F.3d 114 (2d Cir. 2012)........................4

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000).........................................17

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.,* 889 F. Supp. 2d 453 (S.D.N.Y. 2012).....17

*Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99CIV.3307(RMB)(MHD), 2000 WL 426396 (S.D.N.Y. Apr. 20, 2000)..............................................21

*Randolph Found. v. Duncan*, No. 00 Civ. 1172, 2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) .21

*Rep. of Argentina v. Weltover*, 504 U.S. 607 (1992) ..........................................2, 12

*Rep. of Austria v. Altmann*, 541 U.S. 677 (2004) .................................................24

*Roeder v. Islamic Rep. of Iran,* 333 F.3d 228 (D.C.Cir.2003)....................................7

*Rukoro v. Fed. Rep. of Germany*, No. 19-609, 2020 WL 5666695 (2d Cir. Sept. 24, 2020).............................................................10, 12, 23

*Rukoro v. Fed. Rep. of Germany,* 363 F.Supp.3d 436 (S.D.N.Y. 2019)...................4, 12, 23

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) ....................................20

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)..........................................................1

*Taylor v. Kingdom of Sweden*, No. CV 18-1133 (RJL), 2019 WL 3536599 (D.D.C. 2019)...10

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)...............7, 9, 11

*USA Tropicals v. Zim American Israel Shipping*, 2006 WL 845406 (E.D.N.Y. 2006).......7, 11

*Verlinden v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ....................................2

*Waldron v. Cities Service Co.*, 361 F.2d 671 (2d Cir. 1966), *aff'd First Nat. Bank of Ariz. V. Cities Service Co.*, 391 U.S. 253 (1968)..............................................22

*Youngbloods v. BMG Music*, 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) ................................20

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247 (2d Cir. 2000)............4

## OTHER AUTHORITIES:

Art. 1, 9, 81, 117 Costituzione [Cost.] (It.) (official English translation can be found at https://www.senato.it/documenti/repository/istituzione/costituzione_inglese.pdf)..................8

Art. 1 of the Italian Cultural Heritage Code, Legislative Decree No. 42 of 22 January 2004...8

Art.1, Royal Decree No. 1611 of 1933 ...........................................................9

Art. 2, Law No. 400 of 1988 ................................................................................................9

Art. 4, Law No. 260 of 1958. .............................................................................................9

Art. 53 of Legislative Decree No. 300 of 1999 ...................................................................9

H.R. Rep. No. 94-1487, at 19 ..............................................................................................7

Oral Argument, *Aboutaam v. L'Office Federale de la Culture & Beierwaltes v. L'Office Federale De La Culture*, No. 19-3481-cv (2d Cir. Oct. 20, 2020), https://bit.ly/31SVjPf .......................................................................................................5, 6, 14

*Ministry of Cultural Heritage and Activities (Italy)*, WIKIPEDIA (last edited Jul. 25, 2020). https://en.wikipedia.org/wiki/Ministry_of_Cultural_Heritage_and_Activities_(Italy) ..........21

*The Carabinieri TPC*, MINISTERO DELLA DIFESA (MINISTRY OF DEFENSE), http://www.carabinieri.it/multilingua/en/the-carabinieri-tpc (last visited Oct. 28, 2020) .......22

Defendant, La Repubblica Italiana ("Italy"), respectfully submits this memorandum of law in support of its opposition to the Motion to Add a Party Defendant filed by Safani Gallery, Inc. ("Plaintiff") ECF #37, as well as Plaintiff's request to conduct jurisdictional discovery in its Response to Italy's Motion to Dismiss the Amended Complaint, ECF #29.

## INTRODUCTION AND BACKGROUND

Plaintiff's motion for joinder is but the latest in a series of filings demonstrating an improper reading of the FSIA and controlling precedent. This litigation is absurd, as its jurisdictional claims derive from an improper reading of the FSIA, attempting to portray Italy's sovereign acts and the DA's seizure of an object pursuant to a criminal investigation as an expropriation. The dispute arises from a tip to U.S. law enforcement shared by Italian authorities concerning stolen property, which resulted in the DA seizing the Head under the N.Y. Penal Code and initiating a criminal case in N.Y. Supreme Court ("N.Y. Sup. Ct."). The communication was a clear extension of Italy's police power and is therefore protected by sovereign immunity. *See Barnet v. Min. of Culture & Sports of the Hellenic Rep.*, 961 F.3d 193 (2d Cir. 2020), *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993).

During the course of the state criminal proceeding, spanning nearly two years, Plaintiff benefitted from due process and discovery elucidating the basis for the Head's seizure, the identities of relevant actors, and other information central to the controversy. After requesting to stay the NY Supr. Ct. proceeding, Plaintiff filed the instant action in federal court, accusing the DA of acting as Italy's agent and taking the Head in violation of international law. No court has ever construed the FSIA's exceptions so expansively. There is no exception under the FSIA depriving a foreign sovereign of its immunity for providing a tip to law enforcement. This goes against long-standing policy granting deference to sovereigns according to the restrictive theory of sovereign immunity, which is the foundation of the FSIA. *See Nelson*, 507 U.S. at 360;

1

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487 (1983); *Rep. of Argentina v. Weltover*, 504 U.S. 607, 614 (1992).

As Plaintiff concedes, it cannot meet the commercial activity exception due to controlling case law in the Second Circuit. Pl.'s Resp. to MTD, ECF #29 at 25. In response, it submitted an Amended Complaint ("Am. Compl.") alleging another unsupported theory: expropriation. In a futile attempt to meet the requirements of that theory, it now requests to add the Ministry of Cultural Heritage Activities and Tourism ("MiBACT") as a party. Pl.'s Mot. to Add Party, ECF #37. However, MiBACT did not participate in the seizure of the Head and has never possessed the Head or kept it in its custody. Further, as its core functions are predominantly governmental, MiBACT should be treated as a State for purposes of the FSIA. Using MiBACT to circumvent the "commercial activity nexus" prong of the expropriation exception would not avail Plaintiff, particularly because this Court should not even reach the final prong of the expropriation exception in its analysis. Mot. to Dismiss Pl. Am. Compl., ECF #22 at 16-18 (MTD II). Thus, adding MiBACT would be futile and serve only to further delay the resolution of this case.

Finally, opposing counsel's baseless personal attacks against Italy's counsel and its allegations of a conflict of interest have no bearing here or in any jurisdictional analysis.[1] They are a sideshow meant to distract the court from examining and applying the FSIA and its requirements. These distractions only complicate a straightforward application of the FSIA and allow Plaintiff to delay the resolution of subject-matter jurisdiction, which is a threshold matter. *See Verlinden*, 461 U.S. 480.

---

[1] The Twitter reply made by Italy's counsel that is referenced in opposing counsel's declaration (and which is mischaracterized and misleading) has no bearing on this Court's jurisdictional determination because it does not relate to any of the FSIA's limited statutory exceptions or the facts concerning Italy's role in the case.

Plaintiff's request for joinder should be denied for the following reasons: (1) adding MiBACT is futile because this Court need not reach the commercial activity nexus of the expropriation exception; (2) even if the Court did reach the commercial activity nexus, MiBACT should be treated as the State itself; (3) Plaintiff's claims against MiBACT are based upon the contingent occurrence of a possible future act, not the facts alleged in the Am. Compl.; (4) this Court already informed Plaintiff it would only be granted one amendment; (5) leave to amend should not be granted when there is bad faith or the amendment is due to Plaintiff's mistake; (6) MiBACT's role was revealed early on during this matter's over two-year dispute; and (7) it is against the FSIA's underlying policy.

## ANALYSIS

**1.  Plaintiff's arguments concerning futility are themselves an exercise in futility.**

Plaintiff attempts to shift this Court's attention away from futility because it cannot defeat Italy's Motion to Dismiss. Plaintiff has consistently failed to establish that a taking in violation of international law occurred, making its proposed amendment to join MiBACT futile.

> ***a.   Plaintiff cannot fulfill the takings and international law violation requirements of the expropriation exception so this Court need not reach the commercial activity nexus analysis; therefore, adding MiBACT to meet the final requirement of the expropriation exception is futile.***

Jurisdictional determinations must be made "as near to the outset of the case as is reasonably possible," since the basic objective of sovereign immunity is to free a foreign sovereign from suit. *Bolivarian Rep. of Venezuela v. Helmerich & Payne Intl. Drilling Co.*, 137 S. Ct. 1312, 1317 (2017).  Plaintiff's motion is a dilatory tactic impeding the court from carrying out this crucial analysis, and is not based on legitimate grounds for amendment. Previously, a party seeking to avail itself of the expropriation exception needed only to make a nonfrivolous argument that the exception applied. But in 2017, the U.S. Supreme Court set a higher standard: a party must now

make a legally valid claim to establish the elements of the expropriation exception. *Helmerich*, 137 S. Ct. at 1317. Nonfrivolous arguments are thus insufficient: "the relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (property rights) <u>and</u> that the relevant property was taken in a certain way (in violation of international law)." *Id.* (emphasis added) This standard applies to the entire expropriation exception, not merely to some of its constituent elements. *Rukoro v. Fed. Rep. of Germany,* 363 F.Supp.3d 436, 447 (S.D.N.Y. 2019).

Italy's filings have shown that Plaintiff cannot meet all elements of the expropriation exception, and so Plaintiff wishes to amend again in an attempt to meet the fourth requirement (the "commercial nexus") of the expropriation exception. Am. Compl., ECF #19 at ¶5, 62. Yet that is futile because Plaintiff would still be unable to meet that exception by including MiBACT as a party, nor can it meet the second (the "taking") or third ("violation of international") requirements through amendment or joinder. Accordingly, there is no valid basis for either request.

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." *Panther Partners Inc. v. Ikanos Commc'ns Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Plaintiff's proposed joinder of MiBACT would not cure the deficiencies in its Am. Compl. as it has failed to allege facts establishing the two primary elements of the expropriation exception: (1) a taking; and (2) a violation of international law. Italy has provided ample case law demonstrating that a lawful seizure by law enforcement does not constitute a taking under any definition of the term, let alone one in violation of international law. *See Aboutaam v. L'Office Federale de la Culture de la Fed. Suisse,* No. 1:18-cv-08248 (RA), 2019 WL 4640083 (S.D.N.Y. 2019); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006); *Chettri v. Nepal Bangladesh Bank Ltd.*, 10-CV-8470 (PGG), 2014 WL 4354668 at *18 (S.D.N.Y. Sept. 2, 2014), *aff'd* 834 F.3d 50 (2d Cir. 2016); *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247 (2d Cir. 2000).  MTD II, ECF #22 at 5-9; Reply, ECF #34 at 3-6.

In this Court's analysis, the Second Circuit's oral argument in *Aboutaam v. L'Office Federale de la Culture & Beierwaltes v. L'Office Federale De La Culture* earlier this month is particularly instructive and very helpful in understanding futility in the context of the FSIA. Oral Argument, No. 19-3481-cv (2d Cir. Oct. 20, 2020), https://bit.ly/31SVjPf ("Oral Argument"). *Aboutaam* is the only other case in which a foreign sovereign was sued for the seizure of cultural heritage *via* the expropriation exception of the FSIA.[2] (It is important to note that in *Aboutaam*, it was foreign sovereign authorities who actually seized the property, not U.S. law enforcement.) During oral argument, the Second Circuit panel once again confirmed that *Chettri* is controlling. Oral Argument at 14:30; *Chettri v. Nepal Bangladesh Bank Ltd.*, 834 F.3d 50, 58 (2d Cir. 2016). Importantly, the panel noted that under *Chettri*, a plaintiff must show that the seizure was arbitrary to qualify as a violation of international law and that in *Aboutaam,* the seizure occurred pursuant to a warrant supported by facts outlined by prosecutors who had reason to question the ownership of the property in dispute. Oral Argument at 17:25. The judge noted that the plaintiffs could therefore not fulfill the arbitrariness requirement, stating "criticism over how law enforcement seized property [...] is generally not enough to satisfy the arbitrary condition of a taking, it has to rise to the level of irrational." Oral Argument at 14:50. Further, the Second Circuit also noted that it is a plaintiff's burden to demonstrate that its claims fall within the takings exception. Oral Argument at 14:10. In *Aboutaam*, Judge Raggi stated she did not believe the plaintiffs met this burden. Oral Argument at 15:05.

The same exact situation is now before this Court. Plaintiff has not met its burden because the facts do not support an expropriation claim. Plaintiff <u>cannot</u> show the seizure was arbitrary because, just as in *Aboutaam*, law enforcement seized property pursuant to a warrant that provided

---

[2] The case was dismissed by this Court for lack of jurisdiction for failure to demonstrate that one of the FSIA's exceptions applied to the seizure.

the basis for its seizure. According to controlling case law, this is not an arbitrary taking. Oral Argument at 17:40; *Chettri*, 834 F.3d at 58, *Hilsenrath v. Swiss Confederation*, No. C 07-02782 WHA, 2007 WL 3119833, at \*6 (N.D. Cal. Oct. 23, 2007), *aff'd* 402 F. App'x 314 (9th Cir. 2010); *see generally Aboutaam*, 2019 WL 4640083. Further, Plaintiff has an even greater difficulty proving an expropriation than the plaintiffs in *Aboutaam* because seizure of the Head was conducted by U.S. authorities, not Italian ones. A taking cannot be alleged against Italy because Italy never seized the Head or took possession of it in violation of international law. Plaintiff cannot prove an expropriation carried out by Italy, as it is impossible to prove a nonexistent event.

Including MiBACT will not help Plaintiff meet the FSIA's expropriation exception. Just as Italy never made an arbitrary seizure or took possession of the Head, MiBACT also never seized or took possession of it. Notably, the "takings jurisdiction exists only where the property at issue passed in the first instance from the plaintiff… to a sovereign or some person or entity acting on a sovereign's behalf." *Orkin v. Swiss Confederation*, 770 F.Supp.2d 612, 616 (S.D.N.Y. 2011), *aff'd* 444 Fed. Appx. 469 (2d Cir. 2011) (emphasis added). Here, the Head was seized by the DA pursuant to an independent investigation. Italy's sole act was informing the DA of stolen property within its jurisdiction. That is insufficient to create even minimum contacts with the U.S., much less meet one of the FSIA's limited exceptions. *See Guevara v. Rep. of Peru*, 608 F.3d 1297, 1310 (11th Cir. 2010). Thus, adding MiBACT is futile.

As there was no taking by either Italy or MiBACT, there can be no expropriation under the FSIA. *See* Oral Argument at 17:40; *Chettri*, 834 F.3d at 58; *Hilsenrath*, 2007 WL 3119833, at \*6. Accordingly, this Court need not reach the commercial nexus requirement of the expropriation exception in its jurisdictional analysis.

> **b. *Even if this Court were to reach the commercial activity nexus requirement in its analysis, adding MiBACT would not overcome the deficiencies in Plaintiff's expropriation claim for three reasons: (1) MiBACT must be treated as the State itself***

***under the FSIA; (2) there was no commercial nexus; and (3) Plaintiff's claims against MiBACT are contingent upon the occurrence of a future event.***
   ***i. MiBACT must be treated as the State itself under FSIA.***

Even if this Court found that MiBACT was responsible for a taking in violation of international law, Plaintiff would still be unable to meet the commercial nexus requirement. The commercial nexus requirement requires that either: (a) the Head be present in the U.S. in connection with a commercial activity by Italy in the U.S.; or (b) the Head or property exchanged for it is owned or operated by an agency or instrumentality of Italy engaged in commercial activity in the U.S. MTD II, ECF #22 at 16. Here, Plaintiff must satisfy the "higher threshold" of 4(a) for claims against "foreign states" because MiBACT should be treated as the State itself. *See Garb v. Rep. of Poland*, 440 F. 3d 579, 590 (2d Cir. 2006); *see also* H.R. Rep. No. 94-1487, at 19.

The Second Circuit follows the core functions test established in *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994), holding that if an agency or instrumentality's functions are predominantly governmental, then it is a political subdivision of the foreign sovereign and should be treated as the State itself. *Garb,* 440 F.3d at 592 (stating that it relies on "*Transaero* as an authoritative restatement of 'federal common-law principles.'"). If its core functions are predominantly commercial, then it is treated as an agency or instrumentality. *Garb*, 440 F.3d at 592.  The first situation applies here.

Under *Transaero*, MiBACT should be treated as the State. Ministries, as well as armed forces and military intelligence services, fall under the governmental category and are treated as a State under the FSIA because conducting affairs of state is a quintessential government function. *NML Capital, Ltd. v. Space Exploration Technologies Corp.*, 2015 WL 1334291 at *5 (C.D. Cal. 2015). *See also, Howe v. Embassy of Italy*, 68 F.Supp.3d 26 (D.D.C. 2014); *Roeder v. Islamic Republic of Iran,* 333 F.3d 228 (D.C.Cir.2003); *USA Tropicals v. Zim American Israel Shipping*, 2006 WL 845406 (E.D.N.Y. 2006). In *O'Connell Mach. Co. v. M.V. "Americana,"* 734 F.2d 115

(2d Cir. 1984), another case involving Italy, the Second Circuit held that the political subdivisions "includes all governmental units beneath the central government." This includes MiBACT, whose Minister is appointed by the President of the Republic under Art. 92 of the Italian Constitution.

Plaintiff provides an affidavit from attorney Massimo Sterpi describing MiBACT as an autonomous organ with legal independence; nonetheless, he admits that "[t]he Italian Republic acts through these organs." Pl.'s Mot. to Add Party, ECF #37-2 at 1. Despite his reference to "commentators" describing MiBACT as a separate legal personality, these are all secondary sources interpreting Italian law. On the other hand, various *primary* sources, including the Italian Constitution, make it clear that MiBACT's competencies are subordinate to the State and it acts under the guidance of the State. Notably, cultural property is State-owned.[3] MiBACT does not own property in its own name as it "shall exercise the function of protection on cultural property belonging to the State."[4]

Only public bodies are tasked with promoting the public enjoyment of such property (private parties only have the duty of conservation),[5] and the State has exclusive legislative powers regarding cultural property.[6] Furthermore, under the Cultural Heritage Code,[7] MiBACT is given administrative competencies and designated as an arm of the State in cultural property matters. MiBACT is tasked with supervising other regions and territorial public bodies and granted the

---

[3] Art. 9 of the Italian Constitution: "The Republic promotes the development of culture and of scientific and technical research. It safeguards the natural landscape and the historical and artistic heritage of the Nation."

[4] Art. 1 of the Italian Cultural Heritage Code, Legislative Decree No. 42 of 22 January 2004: "3. The State, the Regions, the Metropolitan Areas, the Provinces and Municipalities shall ensure and sustain the conservation of the cultural heritage and foster its public enjoyment and enhancement. 4. Other public bodies shall, in carrying out their activities, ensure the conservation and the public enjoyment of their cultural heritage. 5. Private owners, possessors or holders of property belonging to the cultural heritage must ensure its conservation." (Cultural Heritage Code).

[5] *Id.*

[6] Art. 117 of the Italian Constitution: "The State has exclusive legislative powers in the following matters: …(s) protection of the environment, the ecosystem and cultural heritage."

[7] Cultural Heritage Code.

power of pre-emption to purchase cultural property,[8] with its budget set by the State.[9] Another law explicitly states that MiBACT "carries out the functions of State responsibility" and develops State policy in cultural property matters.[10] These are all sovereign, governmental activities that private parties cannot perform. *See Barnet*, 961 F.3d at 201-02. Furthermore, all Italian Ministries are represented and defended in court by the State Attorney's Office[11] and the judicial effects will fall, as a whole, on the State.[12] Under the Italian constitutional system, conflicts between ministries are not resolved in court, but by the Council of Ministers.[13] Italian Ministries, including MiBACT, are therefore not autonomous bodies, but rather operate as extensions of the State.

Government bodies, including ministries, are not precluded from carrying out commercial or administrative activities. However, the relevant standard under *Transaero* is that a relevant entity's functions are <u>predominantly governmental</u>. For instance, the U.S. Department of Justice certainly carries out administrative tasks in its day-to-day operations and can sue or be sued under its own name, but this does not make it an entity independent from the U.S. Like MiBACT, it is granted certain powers but is ultimately subordinate to the State. Furthermore, if an entity's assets are not separate from those of the State, the entity is not considered a legal person separate from the State even if, in a formalistic sense, it can enter into contracts and be sued in its own name. *Garb v. Rep. of Poland*, 207 F.Supp.2d 16, 37 (E.D.N.Y. 2003) (quoting brief of Amicus Curiae United States at 17, *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir.

---

[8] Arts. 18 and 60 of the Cultural Heritage Code, respectively.
[9] Art. 81 of the Italian Constitution.
[10] Art. 53 of Legislative Decree No. 300 of 1999.
[11] Art.1, Royal Decree No. 1611 of 1933.
[12] *See, e.g.*, Art. 4, Law No. 260 of 1958.
[13] Art. 2, Law No. 400 of 1988.

1994) (No. 92-7222)). As stated above, MiBACT does not own assets separate from the State, making it a foreign sovereign for the purposes of the FSIA.[14]

MiBACT essentially steps into the State's place when dealing with cultural heritage matters and like the State, is bound by the Constitution to hold this property in trust for the State and the State's people. This is something a private party cannot do; it is a core governmental function. *See Garb*, 440 F.3d at 594 (the Second Circuit held that the Ministry of the Treasury was determined to be an integral part of Poland's political structure and its core functions were governmental because it held and administered property of the State), *Barnet*, 961 F.3d at 201-02.

Cultural ministries such as MiBACT exercise core governmental functions and are part of the foreign State to such a degree that courts have held they should be treated as such under the FSIA. In *Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001), the Fifth Circuit held that Russia's Ministry of Culture was a political subdivision of the State and part of the sovereign, making its core functions governmental. In *Taylor v. Kingdom of Sweden*, No. CV 18-1133 (RJL), 2019 WL 3536599 (D.D.C. 2019), the court found that the agency's[15] promotion of Sweden's view of world culture to its own citizens and the international community, and the obligation to carry out governmental priorities set by the State in cultural property matters, were "an intrinsic part of Sweden's sovereign structure and governmental operation," making it a State for FSIA purposes. The agency's activities included representing the country on matters of cultural diplomacy and furthering the country's "cultural patrimony on the international stage," propagating "its view of world culture domestically and abroad." *Taylor*, 2019 WL 3536599 at *3.

---

[14] The fact that MiBACT now operates the Antiquarium Forense is irrelevant because it did not do so at the time the Head went missing, over a decade prior to MiBACT's existence.

[15] National Museums of World Culture, a government agency established within the Swedish Ministry of Culture.

Just last month in *Rukoro v. Fed. Rep. of Germany*, No. 19-609, 2020 WL 5666695 at *5 (2d Cir. Sept. 24, 2020), the Second Circuit held that the use of property for cultural propagation and other programs to develop interest in the German people, language, culture, and country "with the ultimate goal of commercial growth through cultural growth" are all activities taken by sovereigns. Finally, the promotion of a State's business interests and sponsored tourism are insufficient to constitute commercial activity under the FSIA. *LaLoup v. United States*, 29 F.Supp.3d 530, 551-52 (E.D. Pa. 2014). MiBACT carries out a variety of activities including the protection and promotion of Italian cultural heritage, engaging in cultural diplomacy, and upholding the State's priorities in cultural matters, following the State's directives. Therefore, it should be treated as a State under the court's FSIA jurisdictional analysis. This also applies to the Carabinieri TPC, who made the communication to the DA. Although the Carabinieri TPC operates partially under the umbrella of MiBACT, it is primarily a public military body and according to case law, treated as a foreign sovereign under the FSIA. *See Transaero*, 30 F.3d at 151 ("[A]rmed forces are as a rule so bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality'").

Finally, in *USA Tropicals v. Zim American Israel Shipping*, plaintiff's request for amendment and joinder was denied as to Jamaica's Ministry of Agriculture, holding that it was "clearly an arm of a foreign state and generally immune from suit under the Foreign Sovereign Immunities Act." 2006 WL 845406 at *1. The plaintiff there sought compensation for damaged cargo under the commercial activity exception, arguing that since goods were inspected by the Ministry prior to shipment, it engaged in commercial activity. The court disagreed. *Id.* at *2, citing *MOL, Inc. v. Peoples Rep. of Bangladesh*, 736 F.2d 1326, 1385 (9th Cir. 1984). The claims arose from the Ministry's exercise of police powers, making it immune under the FSIA and rendering joinder inappropriate. Similarly, even if MiBACT were a proper party here, it would still fall under

the grant of sovereign immunity as a political subdivision of Italy exercising the State's police power. Adding it to the instant case would ultimately be futile on these grounds in addition to the fact that there was no expropriation.

### ii. There was no commercial nexus in the instant case, only communication to law enforcement authorities.

MiBACT did not seize the Head, nor does it have the Head in its possession. And contrary to Plaintiff's assertions, MiBACT's activities in the U.S. are not commercial. *Barnet,* 961 F.3d at 196 (unanimously holding that asserting rights to an antiquity under a patrimony law is "archetypal" and "distinctly" sovereign, not commercial activity). Cultural propagation and programs developed with the aim of promoting interest in a certain people, language, culture and country, even with commercial growth, are all sovereign activities. *Rukoro* at *5 ; *see also, Weltover*, 504 U.S. at 614; *LaLoup*, F.Supp.3d at 551-52. Equating these sovereign governmental activities with commerce would unduly stretch the definition of "commercial" under the FSIA. *Rukoro*, 363 F.Supp.3d at 451; *see also*, *Barnet*, 961 F. 3d 193. Even if MiBACT was added, and even if this Court treated it as an agency contrary to established precedent, Plaintiff is unable to meet the final prong of the expropriation exception because MiBACT did not conduct commercial activity in the U.S. Joinder would thus be futile.

### iii. Jurisdiction cannot be invoked by the possibility of some future event/contingency.

According to Supreme Court precedent, even if Plaintiff had duly added MiBACT as a party in its Am. Compl., its jurisdictional claim must fail because it is based upon a contingency or some uncertain future event. Plaintiff's core allegations stem from its flawed theory that the DA is Italy's agent and that it is not motivated to investigate crimes in N.Y. County according to Constitutional requirements, but is instead controlled by Italy and its cultural ministry. Am. Compl., ECF #19 at ¶6, 7, 23, 24, 25, 26, 27, 28, 61, 63, 73, 74, 76, 78, 81. It further contends that

the DA seized the Head with the express agenda of delivering it to MiBACT at some future time.[16] Am. Compl. ¶25. This is false. "The purpose of the seizure was not to repatriate [at] the time, but rather to investigate criminal activity within New York County, which falls under the Office's [DA's] remit." Bogdanos Affirmation at ¶6 (Ex. A). Further, a review of the DA's functions makes it plain that its duties and loyalty are solely to the People of New York. MTD, ECF #14 at 16. Assistant DA Col. Bogdanos affirms, "As an employee of the State of New York, my duty is to the people of the State of New York under the 1777 Constitution of New York State and under County Law §927, directing this Office to prosecute violations of New York Penal Law. Neither this Office nor its employees are agents of any foreign government, and we do not carry out any actions on their behalf." Bogdanos Affirm. at ¶7. Ex. A.

However, even if Plaintiff's far-fetched theory were true, it cannot invoke jurisdiction based upon a potential future act that may or may not occur. The Am. Compl. states: "**In order to facilitate** the immediate transfer of the Head of Alexander from the Plaintiff to the Italian Ministry of Culture [MiBACT], the DA chose to initiate a summary process in a New York State court **that is intended to be used to return** stolen property to his undisputed rightful owner, expressly where ownership is not contested." Am. Compl., ECF #19 at ¶26 (emphasis added).

Plaintiff itself admits that the Head has <u>never</u> been transferred to MiBACT, but that it is "intended" to be transferred by the DA. Am. Compl. ¶26. Plaintiff also admits that the Head remains in the custody of the DA and under the control of a court order by the NY. Supr. Ct. Am. Compl. ¶25. It is clear that the Head has never been transferred from the DA to MiBACT or Italy. At no time since the initiation of state proceedings in February 2018 did Italy or MiBACT possess or operate the Head because it was and remains under the DA's custody pursuant to a court order.

---

[16] Italy denies that it ever engaged the DA for such a purpose, but rather sought to report a tip about property that was stolen from one of its museums.

According to the Plaintiff's pleaded facts and its own admissions, neither Italy nor any of its agents owned or operated the Head during the time relevant to its cause of action, making the expropriation claim wholly inapplicable. Am. Compl., ECF #19 ¶14-18.

To survive a motion to dismiss, Plaintiff must plead more than a "sheer possibility" that Italy is responsible for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of the FSIA, the Second Circuit declined to find jurisdiction where a plaintiff's claims are speculative. *Mortimer Off Shore Servs. v. Fed. Rep. of Germany*, 615 F.3d 97, 112 (2d Cir. 2010), citing *Iqbal*, 556 U.S. at 678; *see also Africa Growth Corp. v. Republic of Angola*, No. CV 17-2469 (BAH), 2019 WL 3253367, at *7 (D.D.C. July 19, 2019), *appeal dismissed*, No. 19-7090, 2019 WL 6218805 (D.C. Cir. Oct. 23, 2019) ("These proffered allegations, turn, at best, on speculation about future events. […] Thus, consideration of these disputed facts for purposes of the jurisdictional nexus requirement would be inappropriate….").

Here, what ***may*** arise as the future result of the NY Supr. Ct.'s determination (a proceeding that provided Plaintiff with due process, but was stayed by Plaintiff itself), is not the question before this Court and is insufficient to invoke jurisdiction under the FSIA. This month's oral arguments in *Aboutaam* and Judge Raggi's remarks are instructive. The judge stated that plaintiffs' choice not to participate in a state court hearing did not preclude due process, as they were provided with a forum for their claims. Oral argument at 15:14 (Judge Raggi stating, "In our concept of due process, for instance, when someone is challenging state action, if there is an opportunity to be heard in the state, that is part of the process, and you haven't been denied due process until you pursue that."). This Court must make its FSIA determination based upon the present facts, not some future possible situation that may or may not arise.

It is worth noting that *Crist v. Rep. of Turkey*, stated the following: "Plaintiffs are merely stacking one hypothetical upon another and with each additional hypothetical, the probability that

their underlying contention has merit decreases exponentially. It is evident from a consideration of these assertions that plaintiffs' claim of jurisdiction is groundless and strung together with a bare thread of speculation and the slimmest of hopes that jurisdictional discovery would unearth some fact to support their otherwise unsubstantiated allegations… The chasm that separates plaintiffs' jurisdictional allegations and what is actually required to justify jurisdictional discovery in FSIA cases is simply too immense to be bridged solely by plaintiffs' theories." 995 F. Supp. 5, 13 (D.D.C 1998). Although this quotation relates to jurisdictional discovery, it is applicable to Plaintiff's Am. Compl. and requests for amendment and joinder, insofar as they seek to establish jurisdiction through speculation and hypothetical situations.

**2.  Leave to Amend is not freely given in all circumstances, and should be denied here.**

    *a.  Leave to amend is not freely given in situations in which there is bad faith, etc.*

This joinder is a thinly veiled attempt to amend the Am. Compl., and Plaintiff even concedes that the appropriate mechanism to add a party is a Rule 15(a)(2) motion to amend. Mot. to Add Party De., ECF #37 at 4. Plaintiff argues that these motions should be "freely given," citing four EDNY cases. Controlling precedent holds that leave to amend should not be freely given under the instant circumstances. Moreover, the cases Plaintiff relies upon are distinguishable.

First, the precedent cited by Plaintiff describes the more traditional instance of amendment where a defendant has supplied new information during discovery, giving rise to an amendment. Here, Plaintiff attempts to recast information in its possession since the NY Supr. Ct. proceedings in an effort to manufacture justification, resulting in an unexcused delay. Second, the information was publicly available before the instant case was filed; it did not arise during the litigation. Third, Italy never refused to answer Plaintiff's interrogatories and never withheld information; the delay occurred as a result of Plaintiff's actions alone. Fourth, and most importantly, none of these cases involve the FSIA and its particular policy concerns, but instead concern the Fair Labor Standards

Act and product liability. These cases originate in areas of law that anticipate defendants will have exclusive knowledge of relevant facts, and that motions to amend will naturally occur as plaintiffs discover new information through discovery. *See Assam v. Deer Park Spring Water*, 163 F.R.D. 400, 407 (E.D.N.Y. 1995). This consideration should not extend to instances where such information was available in the public record and where Plaintiff had actual knowledge of the information, as in the present case. *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 650 (S.D.N.Y. 2011). Moreover, the FSIA strongly discourages this type of behavior, which serves only to irritate foreign sovereign defendants.

Requests for amendment or joinder under the FRCP must not be abused. Plaintiff attempts to engage in sham fact-finding to manufacture jurisdiction for a nonexistent cause of action. Its contentions that it must clarify the scope of MiBACT's role as an agency or instrumentality and its role in the fictional "taking" are illogical. As previously stated, MiBACT was not involved in any taking[17] and its activities are irrelevant here. Plaintiff had ample opportunity to name MiBACT after including specific claims in its Compl. and Am. Compl. and is not afforded a third bite of the apple to cure its deficiencies, which would still remain after amendment or joinder.

Plaintiff correctly contends that mere delay is an insufficient justification for a court to deny a leave to amend; it must be accompanied by bad faith or undue prejudice. Mot. to Add Party, ECF #37 at 5. But a plaintiff must be timely in its request for an amendment, particularly when it is in possession of relevant facts for months or years (as is the case here). *Hernandez v. BMNY Contracting Corp.*, No. 17 CIV. 9375 (GBD), 2019 WL 418498, at *1 (S.D.N.Y. Jan. 17, 2019) ('[T]he [c]ourt may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when

---

[17] *See* MTD II, ECF # 22 at 6-9, Mot. to Dismiss, ECF #14 at 8-9.

the movant offers no excuse for the delay.") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). The Second Circuit has affirmed denials of leave to amend where plaintiffs have all the information necessary to support the proposed additional claim at the outset of the action "and nothing he learned in discovery or otherwise altered that fact." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *see also, McCarthy*, 482 F.3d at 201 (upholding denial of leave to amend where the party had knowledge of relevant facts seven months before seeking amendment); *Benefitvision Inc. v. Gentiva Health Services, Inc.*, No. 09 CV 473, 2015 WL 1034543, at *13-14 (E.D.N.Y. Feb. 9, 2015) (finding unreasonable delay in seeking to amend to include allegations a party had knowledge of three years earlier); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.,* 889 F. Supp. 2d 453, 458-59 & n.4 (S.D.N.Y. 2012) (finding undue delay where the party knew relevant facts ten months before seeking amendment).

As in the aforementioned cases, Plaintiff had all the information necessary to support adding MIBACT to the Am. Comp. The only thing that changed is Plaintiff's jurisdictional theory. Extensive discovery was held in NY Supr. Ct. explicitly addressing MiBACT. There, Plaintiff submitted 135 interrogatories to Italy. Italy answered each one. The answers were provided by Dr. Fortini on November 8, 2018. Her role as the Archaeology Director and Coordinator for MiBACT was identified in the first paragraph of the answers. In addition, MiBACT's large logo is the header on the first page of the answers. *See* Exhibits 40 and 41 of the DA's January 2019 Reply to Request for Turnover Order (Ex. B) This information about MiBACT is impossible for anyone to ignore.

In addition to the conspicuous MiBACT logo at the top of the page, the answers to the interrogatories explicitly mention MiBACT. Dr. Fortini's answers address the relationship between the Antiquarium Forense, MiBACT and the Carabinieri in answers 97-107. *See* Ex. B. She further explains that the Antiquarium Forense is a State museum under the authority of MiBACT in answers 100 and 104, meaning that the Head is State-owned property. Revealingly,

Plaintiff itself mentions MiBACT in interrogatories 98 and 105. It is impossible for Plaintiff not to have known about MiBACT's role in Italy, due to information explicitly provided to Plaintiff in the state proceeding. It is simply untrue that Plaintiff was unaware of MiBACT at the time of the Am. Compl., as it had already engaged in fact-finding related to MiBACT and was directly given information from a high-ranking MiBACT employee. The fact that these answers were not to Plaintiff's liking has no bearing on the fact that information on MiBACT was and has been available for two years. Plaintiff could have supplemented its 135 interrogatories or asked for further clarification, but chose not to do so.

Plaintiff also seeks to add MiBACT to justify discovery, which is unnecessary for this Court to make its threshold determination. There have been no substantial developments of either law or fact which warrant submitting Italy to a lengthy and costly discovery process. In the FSIA context, jurisdictional discovery cannot be used to uncover facts crucial to an immunity determination in the first instance. *See MMA Consultants 1, Inc. v. Rep. of Peru*, 245 F.Supp.3d 486, 513-14 (S.D.N.Y. 2017), citing *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998). Plaintiff has no grounds to add MiBACT other than its transparent ploy to manufacture jurisdiction and deprive Italy of the immunity to which it is rightfully entitled.

In *Orkin*, both this Court and the Second Circuit determined that a plaintiff had no basis for jurisdictional discovery where it failed to demonstrate that an alleged instrumentality was involved in an FSIA taking, particularly since it had never possessed the property in question: "The Foundation never possessed the drawing. It, therefore, would not be a proper defendant to this action, quite apart from questions of jurisdiction… plaintiff asserts that discovery is necessary to 'ascertain the accuracy of' defendants' evidence on this issue and 'to enable [him] to uncover the extent of the Foundation's involvement' in the pertinent events. He has shown no basis for such discovery on the record." *Orkin,* 770 F.Supp.2d at 614-15. This is **exactly** the case here. MiBACT

never possessed the Head, there was no taking, and there was no violation of international law. Plaintiff cannot establish any link between MiBACT and the Head warranting either joinder or jurisdictional discovery, and relies on conclusory statements rather than specific claims to support its requests. Plaintiff's contentions fail to show anything "more than a sheer possibility" and its proposed amendment would not cure the original complaint's deficiencies. See *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995); *Mortimer*, 615 F.3d at 113. This is considered a "good reason to deny leave to amend." *Acito* 47 F.3d at 55.

### b. *Leave to amend and jurisdictional discovery should not be granted when the leave is needed solely to correct Plaintiff's mistake and lack of understanding.*

This Court should not grant Plaintiff's requests for amendment, joinder, or jurisdictional discovery[18] as they are futile, due to its own avoidable mistake. The original Compl. attributed Italy's tip to the DA to the Carabinieri in an attempt to invoke the commercial activity exception. ECF #1 at ¶22. Once the Second Circuit issued its decision in *Barnet*, the basis for Plaintiff's jurisdictional claim was nullified. *See generally Barnet*, 961 F.3d 193. Rather than withdrawing its Compl., Plaintiff shifted to the expropriation exception, reasserting the same facts and acts but now attributing them to MiBACT.[19] Despite the lack of substantive developments in the case, the Am. Compl. required Italy to file a new motion to dismiss and memorandum of law in response to Plaintiff's new theory. Now that Italy has filed yet another motion exposing the deficiencies in Plaintiff's claims, Plaintiff seeks a second leave to amend. This circuitous procedure is a waste of this Court's, Plaintiff's, and Italy's time.

Plaintiff even admits that it "obviously knew about MIBACT and at [sic] MIBACT's expropriation of Mr. Safani's property" but did not include it as a named party in the Am. Compl.

---

[18] As Plaintiff conflates all these requests, we address them together accordingly.
[19] Plaintiff conceded it cannot fulfill the commercial activity exception. Plaintiff's Resp. to MTD, ECF #29 at 25.

(Mot. to Add Party., ECF #37, p. 2, 8) despite numerous allegations of its role in the supposed taking.[20] Repeated failure to cure deficiencies in the pleadings by amendments previously allowed is grounds for denial of a subsequent amendment. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). Repleading would be futile since the basis of the proposed amendment relies on essentially the same allegations and relief sought in the Am. Compl. without adding new allegations that would cure the case's jurisdictional deficiencies.[21] *See Gosain v. State Bank of India*, 689 F.Supp.2d 571, 584-585 (S.D.N.Y. 2010); *affirmed in part* 414 Fed. Appx. 311 (2d Cir. 2011).

Denial to amend is also warranted when a movant "knew or should have known of the facts upon which the amendment is based when the original pleading was filed." *Hernandez*, 2019 WL 418498 at *1 (citing *In re Commodity Exch., Inc. v. Silver Futures & Options Trading Litig.*, No. 11 Md. 2213 (RPP), 2013 WL 1100770 at *6 (S.D.N.Y. Mar. 18, 2013), *aff'd* 560 F.App'x 84 (2d Cir. 2014)). Plaintiff alleges that new information gleaned through costly independent research confirmed its "earlier suspicions" that MIBACT should have been added, but does not elucidate how this information corrected its prior understanding of the case. Mot. to Add Party, ECF #37 at 8. Tellingly, opposing counsel served as Plaintiff's representative in both this case and the NY Supr. Ct. proceeding. Plaintiff's considerable familiarity with the underlying facts suggests that it is recasting information it knew or should have known in a new light in an attempt to justify a second amended complaint and continue dragging out this relatively straightforward matter. Requesting an amendment to gain a tactical advantage over an opponent provides further grounds

---

[20] *See e.g.*, Am Compl. ¶5, 6, 23, 26, 36, 38, 42, 43, 53, 56, 61, 62.
[21] Plaintiff admits it "does not seek to add any additional claims" or "additional factual allegations concerning the underlying conduct in the case." (Mot. to Add Party De., ECF #37, p. 3)

for denial. *Youngbloods v. BMG Music*, 2011 WL 43510 at *9 (S.D.N.Y. Jan. 6, 2011), citing *Oneida Indian Nation of N.Y. State v. County of Oneida*, 199 FRD 61, 80 (N.D.N.Y. 2000).

Here, as Plaintiff's request to amend is based on information readily available at the time the Compl. was filed in November 2019, it gives rise to an inference of bad faith since it seeks "to derive some tactical advantage from withholding" MiBACT as a defendant. *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99CIV.3307(RMB)(MHD), 2000 WL 426396, at *6 (S.D.N.Y. Apr. 20, 2000). Plaintiff has failed to adequately explain its delay in bringing MiBACT to this action. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016), citing *Randolph Found. v. Duncan*, No. 00 Civ. 1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002).

Even a cursory review of the NY Supr. Ct. filings reveals that Plaintiff had access to the relevant information and has known about MiBAC for at least two years. In addition to the interrogatories answered by Dr. Fortini, the DA's July 23, 2018 Turnover Application mentions the Carabinieri 12 times. (Ex. C.) The DA's January 3, 2019 Turnover Application mentions the Carabinieri 11 times and MiBACT 2 times. (Ex. D.) Plaintiff's own December 2, 2018 Response to the Turnover Application mentions Carabinieri 7 times. (Ex. E.) Tellingly, Plaintiff's own Am. Compl. mentions MiBAC 23 times. *See generally* Am. Compl. Plaintiff was indisputably aware of MiBACT's existence and "role" in this dispute since 2018. One might attribute this decision to Plaintiff's lack of understanding about the FSIA's application or to a tactical maneuver to file multiple pleadings, each requiring a substantive response.

Contrary to Plaintiff's implications, Italy did not withhold information about MiBACT. Mot. to Add Party, ECF #37 at 8. Italy cooperated as a witness in the NY Supr. Ct proceedings and provided the DA and Plaintiff with requested information, including answers to an exhaustive set of interrogatories (in both English and Italian). Additionally, information about MiBACT is

publicly available.[22] Notwithstanding the usefulness of retaining an expert familiar with Italy's governmental structure to provide evidence, that does not mean the underlying information was unavailable to Plaintiff. While some information is obviously in Italian, Plaintiff should have anticipated this occurrence when filing its Compl. against a foreign sovereign. However, information about MiBACT is available in English, even on Italian websites, such as MiBACT's own official site. Rather than there being "a great deal more to investigate," Plaintiff's research is solely focused on commercial activity in the U.S. in the hopes of finding a smoking gun. That is an unacceptable justification for discovery. Jurisdictional discovery is denied where "plaintiff [seeks] to engage in still another 'fishing expedition' in the hope that he [can] come up with some tenable cause of action." *Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d Cir. 1966), *aff'd First Nat. Bank of Ariz. V. Cities Service Co.*, 391 U.S. 253 (1968).

It stretches the bounds of credibility for Plaintiff to claim it was not aware of MiBACT's relationship to Italy or the Carabinieri TPC, as they were named multiple times. A simple search on Google for "Carabinieri TPC" will reveal that the Carabinieri's Art Crime Squad (TPC) was organized under MiBACT. The Carabinieri's website provides an English translation of this information.[23] The second sentence on that page states, "The TPC is a part of the Ministry of Culture [MiBACT] and plays a role regarding the safety and protection of the national cultural heritage, through the prevention and repression of the multiple interrelated criminal activities." This search does not require expense or translation. This is publicly-accessible information

---

[22] While Plaintiff has availed himself to the benefit of a local expert in Italian law, it is notable that the information this expert draws upon is a matter of public record. Italy's earlier mention of Wikipedia was not meant to suggest that Wikipedia alone could serve as the basis of an amendment, as Plaintiff contends (Mot. to Add Party De., ECF #37 at 8), but to illustrate that even the most cursory search of the MiBACT would provoke Plaintiff to investigate further. *See Ministry of Cultural Heritage and Activities (Italy)*, WIKIPEDIA (last edited Jul. 25, 2020). https://en.wikipedia.org/wiki/Ministry_of_Cultural_Heritage_and_Activities_(Italy). Why Plaintiff only thought to undertake an investigation so long after discovering MiBACT's role in providing a tip is not adequately explained.
[23] *The Carabinieri TPC*, MINISTERO DELLA DIFESA (MINISTRY OF DEFENSE), http://www.carabinieri.it/multilingua/en/the-carabinieri-tpc (last visited Oct. 28, 2020).

Plaintiff could have, and should have, found during the course of nearly three years since the investigation began in February 2018, and over two years before Plaintiff submitted its Am. Compl. Moreover, discovery concerning this matter was completed in the N.Y. Supr. Ct, and according to the DA, "There is simply nothing left for a hearing to uncover." Ex. B at ¶61. Plaintiff knew all this information but deliberately chose not to include MiBACT in the instant case, and is now attempting to add it as a party to fit its flawed expropriation theory.

Plaintiff's oversight is not a legitimate excuse to prolong this matter.[24] In *Rukoro v. Fed. Rep. of Germany*, this Court found that a "general reference to delays and difficulties in gaining access to research documents" was insufficient to merit leave to amend. 363 F.Supp.3d at 452. Just as in the instant case, the plaintiffs there also failed to provide a satisfactory explanation as to why the facts alleged in the proposed amended complaint were not included in earlier iterations of the complaint, despite having the information available when the pleading was filed. *Rukoro*, 363 F.Supp.3d at 452. This denial was affirmed by the Second Circuit, stating that even with the proposed amendment, plaintiffs could not establish subject matter jurisdiction over the sovereign. *Rukoro*, 2020 WL 5666695 at *6. Similarly, Plaintiff here cannot meet the expropriation exception and has failed to supply a satisfactory explanation for its deficiencies.

The decision to now add MiBACT stems from Plaintiff's own misunderstanding of the FSIA's expropriation exception, particularly the commercial activity nexus. As demonstrated by Italy in both its Motions to Dismiss and Reply, MiBACT's role – or lack thereof – does not require additional fact-finding, joinder, or amendment. Relevant evidence was already produced in the

---

[24] Plaintiff alleges that Italy caused an undue delay when answering the Compl., and as such Plaintiff's actions should not be considered dilatory. Mot. to Add Party De., ECF #37, n 3. However, Italy's initial requests for time extensions were due to a national quarantine and mandatory lockdown due to COVID-19, in which Italy experienced the highest rates of infection and mortality during the early stages of the pandemic. Plaintiff's argument is also not persuasive due to Plaintiff's own acts since the start of the controversy. The DA's Application for Turnover on Jan. 3, 2019 notes that Plaintiff was granted all of its requested extensions as it was "indefatigable" in terms of seeking discovery in NY Supr. Ct. Ex. B at ¶61. Earlier NY Supr. Ct. filings also note these extensions and requests. Ex. B.

lengthy discovery process in NY Supr. Ct, stayed by Plaintiff. No new developments of law or fact have arisen since the instant case was filed. It is undisputed that MiBACT did not physically take or operate the Head.[25] Am Compl. ¶25. This district has already held that a party who never possessed allegedly expropriated property is not a proper defendant in an FSIA case. *See Orkin,* 770 F.Supp.2d at 614-15. Adding MiBACT would thus not fulfill the expropriation exception. Plaintiff is not entitled to an amendment, joinder, or jurisdictional discovery as a matter of right, as it seeks to use MiBACT to gain a foothold over Italy in spite of sovereign immunity, and to improperly establish subject matter jurisdiction.

### c.   *Plaintiff was provided with a notice from this Court that its Amended Complaint would likely be the only opportunity to amend its complaint.*

Plaintiff was provided with an earlier opportunity to amend its Complaint and add MiBACT. After the Second Circuit's decision in *Barnet*, Plaintiff requested leave to amend rather than respond to Italy's Motion to Dismiss. Your Honor granted this leave, but also cautioned Plaintiff that it would likely be its only opportunity to do so. ECF #16. Plaintiff did not heed that warning but instead filed another deficient pleading. Now Plaintiff attempts to disguise another amendment by referring to its request as a Motion to Add a Party. Plaintiff should not be given another bite of the apple to prolong this case despite failing to establish a legitimate basis for jurisdiction.

### d.   *Allowing another amendment stands in direct contravention to the FSIA's purpose.*

The FSIA was enacted to standardize the process of establishing jurisdiction over foreign sovereigns in an effort to reduce irritation to nations being hauled into court over commercial matters. *Rep. of Austria v. Altmann*, 541 U.S. 677, 716-17 (2004). Legislators viewed the growing

---

[25] As stated in Italy's MTD II and Reply, MiBACT was not even formed until after the Head left Italy and was sold at auction for the first time in 1974 and the Head remains in the custody of the DA under a court order.

trend of denying immunity for strictly commercial matters and recognized the need to place limits on such claims in order to protect both U.S. and foreign interests. *Id.* The Second Circuit has already concluded that the FSIA is not intended to provide plaintiffs with an opportunity to criticize or second-guess ongoing criminal investigations. *See Chettri*, 834 F.3d at 58 ("conclusory criticisms of the manner in which [a foreign sovereign] has conducted its investigation are insufficient to prove a violation of international law.") Plaintiff's tactic is precisely what legislators intended to prevent when enacting the FSIA: frivolous assertions of jurisdiction over a foreign sovereign based on legitimate sovereign activity. In interpreting the expropriation standard, the Supreme Court stated that a nonfrivolous argument alleging a violation of international law alone is insufficient to establish jurisdiction. *Helmerich,* 137 S. Ct. at 1313. Plaintiff fails to meet this standard.

Plaintiff aims to initiate the discovery process prior to establishing jurisdiction, and subject Italy to "the expense, intrusiveness, and hassle of litigation" prior to the threshold finding of subject matter jurisdiction, contrary to comity and the express purposes of the FSIA. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016), citing *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012). Allowing Plaintiff leave to amend again and add MiBACT would not cure the fatal defects in its Am. Compl., but would also directly contravene the FSIA's purpose. Accordingly, policy overwhelmingly favors denial of Plaintiff's motion to add a party.

## CONCLUSION

Italy opposes Plaintiff's motion to add MiBACT as a party as well as its requests for jurisdictional discovery. Plaintiff was afforded due process in NY Supr. Ct., but stayed that proceeding to pursue a frivolous complaint in federal court, alleging that sharing information with U.S. law enforcement was a commercial act that deprived Italy of its immunity under the FSIA. After Italy filed its Motion to Dismiss and it became apparent that Plaintiff could not invoke the

commercial activity exception, Plaintiff filed an Am. Compl. alleging an equally unsupported theory—that sharing information with law enforcement constituted a taking in violation of international law. Not only was the seizure not conducted by Italy, but it was also not arbitrary or discriminatory. Plaintiff is not entitled to another opportunity to amend as of right, but now seeks to continue this charade by requesting jurisdictional discovery and adding a party that was clearly known to Plaintiff for at least two years. Information about MiBACT, a State for purposes of the FSIA, is publicly available and has been the subject of extensive discovery in NY Supr. Ct., including written discovery submitted by Plaintiff itself. The simple fact is that the allegations in Plaintiff's Compl. and Am. Compl., even taken as true, do not meet any of the FSIA's limited statutory exceptions. Plaintiff has not overcome its burden to prove that one of these exceptions applies, and thus Plaintiff should not be permitted to continue filing frivolous pleadings and futile amendments, unnecessarily delaying the threshold determination of subject matter jurisdiction.

We respectfully request that this Court deny Plaintiff's motion and related requests as it was already provided with the opportunity to amend, and adding MiBACT to the instant case now would ultimately prove futile.

Respectfully Submitted,

 /s/ Leila A. Amineddoleh

## **CERTIFICATE OF SERVICE**

I, Leila A. Amineddoleh, hereby certify that I have caused a true and accurate copy of the foregoing Defendant's Opposition to Plaintiff's Motion to Add Party-Defendant to be served on all counsel of record by filing the same electronically through the Court's ECF system on this 29th Day of October, 2020.


_/s/ Leila A. Amineddoleh
Leila A. Amineddoleh (Bar Number 1211)

**Amineddoleh & Associates LLC**
Leila A. Amineddoleh
Polina Ivko

43 West 43 Street
Suite 171
New York, NY 10036
Telephone: 212 709-8149
Leila@artandiplawfirm.com

*Attorneys for Defendant, La Repubblica Italiana*