```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
 Safani Gallery, Inc.,                                     :
                                                           :
                                  Plaintiffs,              :
                                                           :         19-CV-10507 (VSB)
                 - against -                               :
                                                           :         OPINION & ORDER
 The Italian Republic,                                     :
                                                           :
                                  Defendants.              :
                                                           :
-----------------------------------------------------------X
```

Appearances:

David I. Schoen
Montgomery, Alabama
*Counsel for Plaintiff Safani Gallery, Inc.*

Leila A. Amineddoleh
Polina Ivko
Amineddoleh & Associates LLC
New York, New York
*Counsel for Defendant the Italian Republic*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Safani Gallery, Inc. ("Safani" or "Plaintiff") brings this action against the Italian Republic ("Italy" or "Defendant"). Plaintiff alleges that Italy caused the non-party Manhattan District Attorney's Office ("Manhattan DA" or "DA") to take from Plaintiff, pursuant to law enforcement process, a historical artifact that Plaintiff alleges is rightfully its property. Plaintiff asserts claims for conversion, replevin, unjust enrichment, and declaratory judgment.

      Before me is Italy's motion to dismiss the action for lack of subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Because I find that the FSIA does deprive the Court of subject matter jurisdiction, the motion to dismiss is GRANTED.

I.      **Background**[1]

Safani Gallery is a New York corporation in the business of acquiring and selling historical artifacts. (Am. Compl. ¶ 4.) Safani Gallery purchased a marble sculpture head that the parties refer to as the "Head of Alexander," or the "Head," in 2017, for around $152,625. (*Id.* ¶ 8). Plaintiff took various steps to "investigate[] the Head['s] . . . provenance," (*id.* ¶¶ 11–18), and came to believe that the Head was neither stolen property nor otherwise subject to another's claim of rightful ownership, (*see id.* ¶¶ 20–21).

In February 2018, an employee of an Italian government agency called the Ministry of Cultural Heritage and Activities ("Ministry") contacted the Manhattan DA and reported that Safani Gallery was advertising its possession of what the Ministry employee said was a stolen object: The Head of Alexander. (*Id.* ¶ 23.)[2] The Italian government's employee told the DA's office that the Head was "a stolen object, rightfully owned" by Italy. (*Id.*).

In response to the Ministry employee's reporting, "[o]n the same day that it received the claim," the DA "obtained a warrant for the seizure of the Head," and seized it from Safani Gallery. (*Id.* ¶ 24.) Plaintiff alleges that the Manhattan DA then employed what Plaintiff characterizes as a procedurally-improper "summary process in a New York State court" designed to "return stolen property to [its] undisputed owner," rather than for situations where ownership is contested. (*Id.* ¶ 26.) In doing so, Plaintiff claims, the DA was "acting on behalf of" Italy. (*Id.* ¶ 28; *see also id.* ¶ 44 (averring that the DA worked at Italy's "behest, . . . together with the

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint ("Am. Compl."), which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Defendant provides its own account of how an employee at an Italian museum came to recognize the Head as stolen, (*see* Doc. 23 at 10–11), but I have no need to reconcile Plaintiff and Defendant's competing accounts to reach resolution here.

Homeland Security Department, and without any sufficient independent investigation into whether the Head of Alexander actually was stolen property.").)

According to the record from the New York State court, on November 13, 2019, Plaintiff and the DA appeared in New York State court to address the Head's ownership. (Doc. 23-2 at 2.) The New York State court ruled that it was not best suited to determine the rightful owner of the Head and, seemingly in light of the fact that Plaintiff had already filed this action, (*see id.* at 4:24–6:4), ordered the DA "to retain control of the property . . . until ownership is determined by the Southern District of New York," (*id.* at 52:18–23.).

## II.      Procedural History

Plaintiff filed this action against Italy on November 12, 2019. (Doc. 1.) Italy moved to dismiss on June 22, 2020. (Docs. 13–15.) After seeking and obtaining an extension to file an amended complaint, (Docs. 17, 18), Plaintiff amended its complaint on July 22, 2020, (Doc. 20). Italy moved to dismiss for lack of subject matter jurisdiction, pursuant to the FSIA, on August 19, 2020. (Doc. 22.) Plaintiff filed its opposition brief on September 17, 2020 (Doc. 29), and Italy filed its reply on October 3, 2020, (Doc. 34). Shortly after briefing was filed, on October 15, 2020, Plaintiff moved to add the Ministry as a defendant in this action. (Doc. 36.)

## III.     Legal Standards

### A. Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject

matter jurisdiction as the "threshold question") (internal quotation marks omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration, internal quotation marks, and citation omitted). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted).

### B. *FSIA*

"In a motion to dismiss on FSIA grounds, the movant must first make a *prima facie* showing that it is a 'foreign state' under the Act." *Freund v. Republic of Fr.*, 592 F. Supp. 2d 540, 552 (S.D.N.Y. 2008). "Once the movant makes that showing, the opposing party 'has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted[.]'" *Id.* (quoting *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). "Where the plaintiff satisfies its burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 204 (2d. Cir. 2018) (internal quotation marks omitted).

## IV. Discussion

Italy argues that it is immune from suit under the FSIA, which "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Under the FSIA, "a foreign state, including its agencies and instrumentalities, is presumptively immune from suit in U.S. courts unless a specific FSIA exception to such immunity applies." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 388 (2d Cir. 2000); *see also* 28 U.S.C. § 1604. The parties agree that Italy is a foreign state and thus that jurisdiction over it can be obtained only in accordance with the requirements of the FSIA.

Plaintiff argues three of the FSIA's exceptions apply to allow Italy to be sued in this Court: (i) the waiver exception, *id.* § 1605(a)(1); (ii) the expropriation exception, *id.* § 1605(a)(3); and (iii) the tortious activity exception, § 1605(a)(5). (*See* Doc. 29 at 13, 14, 23.) Italy argues none of these exceptions apply. I analyze the applicability of these three exceptions below.

### A. FSIA Waiver Exception

As Italy correctly points out, immunity is not waived unless it is "clear and unambiguous." *NML Capital, Ltd. v. Banco Cent. de la República Arg.*, 652 F.3d 172, 195 (2d Cir. 2011). "[T]he implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) (enumerating examples of implied waiver including "where a foreign state has agreed to arbitration . . . or where a foreign state has agreed that the law of a particular country should govern a contract," or "where a foreign state has filed a responsive pleading in an action without

raising the defense of sovereign immunity." (emphasis omitted) (quoting H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6617)).

Safani Gallery does not argue that there was any explicit waiver. Rather, it argues that Italy implicitly waived immunity by (1) "mak[ing] the affirmative decision here to contact a U.S. state prosecutor and [*sic*] 'demand' that his office seize and 'return' to Italy the Head of Alexander," and, (2) by participating in the "state court proceedings" pertaining to the Head. (Doc. 29 at 22.) These arguments are not persuasive. First, Safani Gallery nowhere explains why contacting the DA's office would waive immunity. *Cf., e.g.*, *Khochinsky v. Republic of Pol.*, No. 18-cv-1532 (DLF), 2019 WL 5789740, *4–5 (D.D.C. Nov. 6, 2019) (holding no implied waiver where Poland attempted to extradite plaintiff); *see also* 14A Arthur R. Miller, Federal Practice and Procedure § 3662.3 n.17 (4th ed.) (listing cases rejecting waiver). Second, Safani Gallery does not allege that Italy appeared in any New York State proceeding at all such that it could have waived immunity by failing to raise the defense. (*See* Doc. 23-2 at 2 (recording appearances at the relevant state court proceeding from only the DA and Safani Gallery).) In other words, no one from the Italian government filed a notice of appearance in the New York State proceeding. Third, even if Italy had participated in a state court proceeding, Safani Gallery provides no authority or argument as to why an appearance in a separate proceeding would constitute a waiver of immunity before this Court. *Cf. Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1017 (2d Cir. 1991) (rejecting argument that "a suit by a foreign sovereign in a United States court with respect to a particular matter constitutes a waiver of immunity from jurisdiction as to associated claims.").

Accordingly, the waiver exception to the FSIA is not satisfied.

### B. FSIA Expropriation Exception

"[I]n order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (citing 28 U.S.C. § 1605(a)(3)). The necessary nexus requirements can be satisfied if plaintiff makes a showing "either that [1] 'such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state,' or [2] 'such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity." *Rukoro v. Fed. Republic of Ger.*, 976 F.3d 218, 224 (2d Cir. 2020) (quoting *Zappia Middle E Const. Co.*, 215 F.3d at 251). The parties agree that this case involves a property dispute.

As to whether property has been taken, Italy argues it was not because no facts "indicat[e] that Italy controls the Head," since it "was the DA who seized it." (Doc. 23 at 15.) Defendant counters that there in fact has been a taking because the DA "seiz[ed] the Head of Alexander . . . on Italy's demand." (Doc. 29 at 24.) Therefore, my disposition, at least in part, turns on whether the DA acted as Italy's agent, or whether it is merely a non-party that acted on its own accord.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (internal quotation marks omitted); *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 58 (2d Dep't 2013). "Essential to the agency relationship is the notion that the agent acts subject to the principal's direction and control." *Lumbermens Mut. Cas. Co. v. Franey Muha*

*Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 301 (S.D.N.Y. 2005); *see Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.").

Here, I find that Plaintiff has failed to allege facts to support any inference that the DA acted subject to Italy's direction and control.  The well-pleaded facts in the Amended Complaint describe the Manhattan DA as having received a call from an employee of the Ministry who reported that the Head "was a stolen object[] rightfully owned . . . by" an arm of the Italian government.  (Am. Compl. ¶ 23.)  In response to this, the DA obtained a warrant and oversaw seizure of the Head.[3]  (*Id.* ¶ 24.)  With only these facts before me, I have no basis to infer that the DA was controlled by Italy in how it executed its process pertaining to the Head.  From the materials filed by the parties, the most reasonable inference I can draw in Plaintiff's favor is that the DA's process in its handling of the Head was instigated by Italy and subpar.  (*Cf., e.g.*, Doc. 19 ¶ 26 (complaining of the DA's seeking a "summary process" in court unsuited for handling the property ownership dispute around the Head).)  There is no evidence that Italy controlled the actions of the DA's office.  This is not enough to find the necessary agency relationship.  Indeed, Italy's relationship to the DA's office is analogous to someone who reports a crime or that something was stolen from them.

Moreover, I find that the alleged taking was not in violation of international law.  "[A] violation of international law requires that the taking not be for a public purpose, or that the taking be discriminatory, or not accompanied by provision for just compensation." *Aboutaam v. L'Office Federale De La Culture de la Confederation Suisse*, No. 18-CV-8248 (RA), 2019 WL

---

[3] Indeed, an attorney in the DA's office submitted a statement stating that "[u]nder no circumstances are foreign governments permitted to direct, steer, or control any investigations of, or decisions made by," the DA, and that Italy "did not direct, steer, or control the investigation that led to the seizure, the seizure itself, or the resulting criminal proceedings" pertaining to the Head. (Doc. 23-3.)

4640083, at *3 (S.D.N.Y. Sept. 24, 2019) (quoting *Smith Rocke Ltd. v. Republica Bolivariana de Venez.*, 12-CV-7316 (LGS), 2014 WL 288705, at *7 (S.D.N.Y. Jan. 27, 2014)) (alteration marks omitted); *Rukoro*, 976 F.3d at 225 ("the relevant factual allegations must make out a legally valid claim that . . . the relevant property was taken in a certain way (in violation of international law.") (quoting *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017)). Because of this, in general, a seizure of property "in connection with an ongoing [] investigation" does not count "within the meaning of § 1605(a)(3)." *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 58 (2d Cir. 2016); *see also id.* ("the complaint's conclusory criticisms of the manner in which Nepal has conducted its investigation are insufficient to prove a violation of international law.").

Plaintiff argues that Italy violated international law by "expropriating the property of another state's national[] without payment of just compensation," and that "[t]he taking here was arbitrary" and "discriminatory," which it says "satisfies" the international law requirement of the expropriation exception. (Doc. 29 at 26–27.) However, the facts alleged do not support these conclusory statements. Rather, the facts alleged by Plaintiff establish that the Manhattan DA "obtained a warrant for the seizure of the Head of Alexander" and seized the Head pursuant to that warrant. (Am. Compl. ¶ 24.) Plaintiff thus alleges that the Head was taken as part of a law enforcement investigation, i.e., for a public purpose.[4]

---

[4] Separately, Plaintiff has failed to satisfy the nexus requirement of the expropriation exception. Plaintiff argues that the Ministry qualifies as "an agency or instrumentality" for nexus purposes, and thus that its commercial activity in the United States allows this Court to exercise jurisdiction over Italy. (Doc. 27 at 35). I disagree based on the record before me.

Under the "core functions" test applicable in the Second Circuit, a foreign sovereign's government agency or instrumentality will be treated as a foreign sovereign itself if its "core functions . . . are predominantly governmental," as opposed to "commercial." *Garb v. Republic of Pol.*, 440 F.3d 579, 594 (2d Cir. 2006). Here, the Ministry's core functions appear to be governmental, as it "hold[s] and administer[s] the property of the [Italian] state." *Id.* (internal quotation marks omitted). According to Plaintiff's own filings, the Ministry has been tasked by Italian legislation with "the care and management of antiquities and fine arts." (Doc. 29-5 ¶ 5.) This account is

9

### C. FSIA Tortious Activity Exception

Under the FSIA, a court can exercise "jurisdiction over foreign sovereigns where the plaintiff seeks money damages 'for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of [the] foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.'" *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (emphasis omitted) (quoting 28 U.S.C. § 1605(a)(5)). However, the tortious activity exception does not apply if the alleged "tort is 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.'" *Id.* at 145 (quoting 28 U.S.C. § 1605(a)(5)(A)).

I find that the tortious activity exception has not been met. First, because nothing establishes that the DA acted as Italy's agent, as explained *supra*, I have no basis to infer that Italy committed any tort. Second, the well-pleaded allegations make out the DA's handling of the Head to have fallen within a discretionary function. *See Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996) (collecting cases discussing the discretionary nature of law enforcement matters); *cf. Swarna*, 622 F.3d at 145 (looking to case law on the Federal Tort Claims Act's "discretionary function provision" for guidance in the FSIA tortious activity context); *Wang v. United States*, 61 F. App'x 757, 759 (2d Cir. 2003) ("Conduct taken by law enforcement agents involving an element of discretion . . . is bulletproof from liability under the

---

corroborated by Italy's briefing. (Doc. 34 at 15.) *Cf. Taylor v. Kingdom of Swed.*, No. CV 18-1133 (RJL), 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019) (holding that a Swedish agency was "part of Sweden's sovereign structure and governmental operation" because its "functions include the promotion of Sweden's view of world culture to its own citizens and the international community"); *Barnet v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193, 200–01 (2d Cir. 2020) (holding that "sending [a] letter in connection with [a] claim of ownership over [a] figurine pursuant to [a foreign sovereign's] patrimony laws," as the Ministry is alleged to have done, is an activity of "sovereign nature").

operative discretionary function exception" under the FTCA) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536–37 (1988)). Plaintiff alleges that the DA "received the claim" from Italy; "obtained a warrant;" and "chose to initiate a summary process in a New York State court" to resolve Plaintiff's claim of ownership as to the Head in Italy's favor. (Am. Compl. ¶¶ 24, 26.) Even if I were to find that these assertions are supported by well-pleaded facts, Plaintiff has still described the DA as exercising its own independent discretion in the actions it has taken with regard to the Head. In other words, it was up the DA's office whether or not to take any actions with regard to the Head.

### V. Plaintiff's Request for Jurisdictional Discovery Is Denied

"[J]urisdictional discovery is only permitted in the FSIA context 'to verify allegations of specific facts crucial to an immunity determination,' not to uncover those facts in the first instance." *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 513–14 (S.D.N.Y. 2017) (quoting *SI Grp. Consort Ltd. v. Ukr., Ivano-Frankivsk State Admin.*, No. 15 CV 3047-LTS, 2017 WL 398400, at *4 (S.D.N.Y. Jan. 30, 2017)), *aff'd*, 719 F. App'x 47 (2d Cir. 2017). Here, Safani Gallery does not request jurisdictional discovery based on "specific facts that it seeks to verify through discovery," *MMA Consultants*, 245 F. Supp. 3d at 514, but instead wants to engage in a search for facts in the first instance that would "include obtaining all communications between Italy and the DA," (Doc. 29 at 33). I cannot allow this.

### VI. Leave to Amend

Safani Gallery seeks leave to amend its complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that leave to amend a pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, need not be granted where doing so would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962).

The decision whether to grant leave to amend is within the sound discretion of the District Court. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995).

Safani Gallery seeks leave so it can add the Ministry as a defendant and so it can plead facts that would overcome any immunity granted to the Ministry by the FSIA. (Doc. 29 at 34.) However, adding the Ministry would not surmount the deficiencies identified here, *see supra* note 4, because Plaintiff has failed to allege facts that establish (1) an agency relationship between the DA and either Italy or the Ministry, and (2) a violation of international law. Accordingly, I deny leave to amend without prejudice.

### VII. Conclusion

The motion to dismiss on FSIA grounds is GRANTED. Plaintiff may renew its motion for leave to amend by filing, within 21 days of this order, a motion for leave to amend that explains how any newly pleaded facts cure the identified deficiencies. Plaintiff is directed to provide a draft version of its amended complaint and a markup that shows the revisions from the prior version of the complaint. The Clerk of Court is respectfully requested to close all open motions, as they are now moot.

SO ORDERED.

Dated: August 2, 2021
      New York, New York

Vernon S. Broderick
United States District Judge