# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Safani Gallery, Inc.,

           Plaintiff,

v.                                   Civil Action No. 1:19-cv-10507-VSB

The Italian Republic;

Ministero dei Bene e delle Attivita Culturali
  E del Turismo (a/k/a Ministry of Cultural
  Heritage and Activities and Tourism);

Cyrus Vance, Jr.,
New York County District Attorney;

           Defendants;

Head of Alexander,

           *In Rem Defendant.*

## SECOND AMENDED COMPLAINT

## INTRODUCTION

This is an action seeking redress for the unlawful taking and continuing expropriation by the Defendants, The Italian Republic, a/k/a Repubblica Italiana, (hereinafter "Italy"), acting through its agents and through an agency and instrumentality of the State, Defendant, Ministero dei Bene e delle Attivita Culturali e del Turismo (a/k/a/ Ministry of Cultural Heritage and Activities and Tourism,

1

(hereinafter "MIBACT"), and by Defendant Cyrus Vance, in his official capacity as District Attorney of New York County (hereinafter "Vance"), of property referred to herein as the "Head of Alexander," which the Plaintiff, Safani Gallery, Inc. (hereinafter "Safani") lawfully acquired as a bona fide good faith purchaser for value and lawfully owns.

In this action, Safani seeks:

(1)   a declaratory judgment declaring that Safani Gallery, Inc. is the exclusive owner of the Head of Alexander and that neither Italy, MiBACT, nor any other party has any rights in or claims to the Head of Alexander;

(2)   the immediate return of the Head of Alexander to Safani; or, in the alternative, just compensation for the Head of Alexander and all costs and fees associated with the seizure;

(3)   damages for the losses incurred by Safani as a proximate result of the Defendant's wrongful conduct as described more fully herein;

(4).   Injunctive relief as described more fully herein.

## JURISDICTION AND VENUE

1.   This action arises under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

2.   This Court also has jurisdiction under 28 U.S.C. §§1330; 1605(a); 1651; 42 U.S.C. §§1983; 28 U.S.C. §1331 (Federal Question); 28 U.S.C. §1343 (a)(3)

(Civil Rights Action), and 28 U.S.C. §1367 (a) (Supplemental Jurisdiction). The case is brought as well pursuant to the Court's *in rem* jurisdiction over the Head of Alexander (the "*res"*).

3.     This Court is an appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b) and (f)(1).  The property that is the subject matter of this action is located in this judicial district and the events giving rise to the claims herein occurred in this judicial district.

## PARTIES

4.     Plaintiff, Safani Gallery, Inc. is a corporation incorporated in the State of New York, with its principal place of business within the Southern District of New York.   It engages in the purchase and sale of valuable artifacts internationally.  It is wholly owned by Alan Safani.

5.     Defendant, Italian Republic, a/k/a/ Repubblica Italiana is a foreign state, more commonly known as Italy.

6.     Defendant Italian Ministry of Culture Heritage and Activities and Tourism ("MiBACT") is an agency and instrumentality of Italy and it engages in commercial activity in the United States.  MiBACT regularly sponsors exhibits of artifacts in the United States and engages in commercial activity in association with those exhibits, selling merchandise and promoting Italian tourism for commercial purposes.

MiBACT has a separate legal personality from Italy.  It can and does act

separately in many areas as a matter of Italian law.  MIBACT has the right to sue and can be sued, it bears civil liability on its own, separate from the State, it owns copyrights in its own name, it independently holds exhibition and reproduction rights, it handles its own asset management, it is a shareholder of a company in its own name, and it engages in commercial activities, in the U.S. and throughout the world such that its "core functions" are commercial.

7.     Defendant Cyrus Vance, Jr., is the New York County District Attorney and is an adult, resident-citizen of New York, located within this District.  At all times relevant to this lawsuit, Defendant Vance, acting through his office's employees and agents, and others they have associated with and worked in concert with, has acted under color of State law and the actions complained of herein, were taken in violation of clearly established law at the time they were taken.

8.     The Head of Alexander is the *res* at issue in this action.  It is located within this District, in the custody, at present, of the New York County District Attorney, following its seizure, also within this District, from Safani Gallery, Inc.  This Court's *in rem* jurisdiction is invoked with respect to this *res*, to give notice to all parties who claim an ownership interest in the Head of Alexander and this Court is the forum in which all who make any claim to an ownership interest in the Head of Alexander should bring his/her/its claim for presentation to the Court, in order for the Court to quiet title and to determine who is the lawful owner of the Head of Alexander.  If

the Court determines the lawful owner to be a party other than Safani Gallery, Inc., Plaintiff demands just compensation as a bona fide good faith purchaser for value.

9.      The acts that are complained of in this action attributed to Italy and MiBACT, refer to Italy and MiBACT acting through their agents or instrumentalities, and in concert with Vance and include causing the unlawful taking of the Plaintiff's property (and its rights in the same), in violation of international law. 28 U.S.C. §1605(a)(3).

10.     Additionally, the acts complained of in this action were taken by Italy and MiBACT, acting through their agents, acting in the scope of their office, employment and agency, and were tortious acts occurring entirely in the United States (through telephonic and electronic communications into the United States) causing Plaintiff the loss of his valuable property and to suffer money damages in the United States. 28 U.S.C. §1605(a)(5).

## FACTS COMMON TO ALL COUNTS

### A.  Safani's Acquisition of the Head of Alexander and Provenance Summary

11.     On or about June 20, 2017, Safani purchased the Head of Alexander from Classical Galleries Ltd. for approximately $152,625.00 and is a bona fide good faith purchaser for value of the Head of Alexander.

12.     In connection with the purchase of the Head of Alexander, Safani was given

express representations and warranties of the authenticity, ownership, export licensing, and other attributes of the provenance from the Foundation that sold Safani the piece through Classical Galleries. Ltd. and Safani relied on the same. Additionally, each sale of the Head of Alexander by and through Sotheby's included similar representations and warranties and each buyer relied on them.

13.     On or about August 7, 2017, Safani caused the Head of Alexander to be transported from England, where Safani viewed and purchased the piece, to New York, with all legally required import documents.

14.     In an exercise of its due diligence, Safani investigated the Head of Alexander's provenance and retained an experienced researcher to assist in researching the piece's provenance.

15.     Among other steps Safani took in the process of researching the provenance of the Head of Alexander, Safani had a search of the Art Loss Registry conducted.

16.     On or about June 6, 2017, the Art Loss Registry confirmed that it knew of no claims that the Head of Alexander was missing or stolen.

17.     The Art Loss Registry further confirmed that the Head of Alexander had been acquired by the world renowned and respected antiquity collector, Hagop Kevorkian, likely prior to World War II.

18.     A researcher retained by Safani took all reasonable steps to ascertain the details surrounding the acquisition of the Head of Alexander by Mr. Kevorkian.

19.     The Art Loss Registry also confirmed that the Kevorkian Fund offered the Head of Alexander for sale at auction through the reputable auction firm, Sotheby Parke Bernet on November 22, 1974 and advertised the piece with a picture in its catalogue.

20.     The Head of Alexander was offered for sale again at auction by Sotheby's in 2011 and the auction, consistent with Sotheby's practice, was widely advertised around the world, with a picture of the piece included in its catalogue and put on display openly.

21.     The Head of Alexander was purchased at the 2011 Sotheby's auction by the private collector from whom Safani purchased it.  That collector held it from 2012 to 2017 when Safani purchased it.  The private collector received representations and warranties concerning the provenance of the Head of Alexander in connection with its purchase from Sotheby's.

22.     Upon information and belief, at no time ever, prior to February of 2018, has any agent of Italy or any custodian of the Head of Alexander, notified any law enforcement official or made any claim in any forum in any way contending or even suggesting that the Head of Alexander ever was stolen or constituted stolen property.

23.     There is no competent evidence at all that the Head of Alexander ever was

stolen, nor, therefore, is there any competent evidence as to when any alleged theft of the Head of Alexander ever took place, nor is there any competent evidence as to who stole or even might have stolen the Head of Alexander.

24.     The Head of Alexander never was stolen.

**B.  Italy's Baseless Claim in 2018 That the Head of Alexander Was Stolen**

25.     On or about February 19, 2018, a member of the staff of the Archaeological Site of the Roman Forum and Palantine Hill, acting as an agent of the Defendant Italian Republic, filed a claim with MiBACT,  asserting to the effect that, after viewing an advertisement for the sale of the Head of Alexander in a catalogue Safani had prepared and publicly distributed, that the staff member "recognized" the piece as one that purportedly had been noted as missing or lost from the Antiquarium Forensic archives approximately 60 years earlier.

26.     On or about February 22, 2018, a MiBACT employee contacted the New York District Attorney's Office in New York, claiming that the Head of Alexander, publicly advertised for sale by Safani at an upcoming art fair in Holland, was a stolen object, rightfully owned and possessed by MiBACT and ultimately by Italy. The MiBACT employee demanded the return of the Head of Alexander which Safani had bought as a bona fide good faith purchaser for value.

27.     That claim was false and was not supported by any competent evidence establishing that the Head of Alexander was stolen and MiBACT knew there was

no competent evidence supporting its false claim at the time it made such claim.  In fact, the information MiBACT relied on and conveyed to Vance did not support its claim that Italy's patrimony laws had been violated, based on the purported date of excavation for the Head of Alexander.  That date was changed once it was recognized that the initially claimed date of excavation would not support its false claim that the Head of Alexander was stolen, in order to support its false claim.

28.      On the same date that it received the claim and demand from MiBACT that the Head of Alexander purportedly had been stolen on some unknown date within the past 100 years or so, by some unknown purported thief, and that never before had been reported stolen, or in any way claimed to have been stolen, Vance obtained a warrant for the seizure of the Head of Alexander from Safani, a law-abiding American citizen and well-respected artifacts collector and dealer, and bona fide good faith purchaser for value, and with the assistance of local and federal law enforcement officers, entered Safani's Gallery in Manhattan, New York, and seized the Head of Alexander.

29.      Upon information and belief, the submission made by Defendant Vance to obtain the warrant was based entirely on information provided by MiBACT and MiBACT's false claim that the Head of Alexander was stolen and did not provide probable cause for the seizure of the Head of Alexander

30.      The Manhattan District Attorney's Office took custody of the Head of

Alexander based on MiBACT's demand that it do so and solely and exclusively for the purpose of transferring the Head of Alexander to MiBACT, without any provision for just compensation to be paid to Safani and for no legitimate law enforcement purpose. There was and had been no ongoing law enforcement investigation with respect to the Head of Alexander; indeed no claim that it was stolen ever before had been made by anyone, at any time, in any forum.

31.     Following its wrongful seizure of the Head of Alexander from Safani, Defendant Vance filed a "Turnover Application," seeking exclusively to have the Head of Alexander transferred to MiBACT, without any hearing before any competent judicial authority.

32.     In fact, to facilitate its goal of summarily having the Head of Alexander taken from Safani and transferred to MiBACT, Defendant Vance initiated "Turnover" proccedings in a state court that, according to clearly established law, and a then-recent judicial decision, had no jurisdiction to provide such summary relief where, as here, ownership is at issue. Defendant Vance well knew this to be the case when he selected that forum and those summary proceedings. Indeed, Defendant Vance's office was a party to the case in which a justice of the court at issue had so ruled. And the decision so holding followed a long line of authority to the same effect.

33.     Defendant Vance continues to maintain custody and control of the Head of Alexander within this judicial district, as an agent of or conduit for Defendants Italy and MiBACT and for the sole and exclusive stated purpose of delivering the Head of Alexander to the Defendant, Italian Republic.

34.     Defendant Vance, acting on behalf of MiBACT, chose that court and that summary proceeding notwithstanding the earlier ruling in a similar case that the court lacked jurisdiction to hear such matters as this, with the case assigned to a different justice on the court - the justice who Defendant Vance had convinced to sign the warrant for the seizure of the Head of Alexander from the Plaintiff.

35.     After considering briefs on the issues - briefs in which Defendant Vance told the state court that it did not even need to conduct any sort of hearing in the matter before the Court ordered the transfer of the the Head of Alexander to Italy and MiBACT - that court convened a hearing and, after an off-the-record discussion of the issues with the parties, announced that while the court was "inclined" to accept that it had jurisdiction to hear the matter, the court was also inclined to agree that it should not hear it and that the matters at issue here should be determined at a "plenary proceeding, civil proceeding" rather than in the summary criminal proceeding for which that court was intended.

36.     The state court justice emphasized that nothing put on before him at the proceeding would be accepted as a fact; rather he would just hear lawyers'

arguments. The state court also advised the parties that while there might be situations where ownership was at issue in which it would be appropriate for the court to exercise jurisdiction, this is not such a case and that this case should be heard in this Court.

37. The state court justice said: "any proceeding that I would do would be in the nature of a summary type of proceeding, and that would not be appropriate in this case." "I think that these are issues that should be explored in the manner suggested by (Safani), and that the best forum for that is the forum they have now chosen, which is the Southern District of New York."

38. The state court denied Defendant Vance's request to turn over the Head of Alexander to Italy.

39. Defendant Vance maintains custody of the Head of Alexander within this District and he is holding it exclusively for the purpose of fulfilling his agenda of sending it to Italy, depriving Safani of its ownership rights and rights as a bona fide good faith purchaser for value, as demanded by MiBACT and Italy.

40. Safani is a bona fide good faith purchaser for value of the Head of Alexander and is its rightful owner to the exclusion of all others.

41. The taking of the Head of Alexander from Safani and continuing to deprive Safani of the possession and control of the Head of Alexander is unlawful.

42. There is no competent evidence to establish a meritorious claim that the

Head of Alexander ever was stolen from the Italian Republic at anytime by anyone ever or that the Italian Republic, MiBACT, or anyone other than Safani is the rightful owner of the Head of Alexander.

43.   Moreover, under Italian law any charge alleging the theft of the Head of Alexander would be barred by the applicable statute of limitations.

44.   Additionally, Safani's status as a bona fide good faith purchaser for value, under the circumstances present here, extinguishes and overrides any claim by the Italian Republic, MiBACT, or anyone else that it is the rightful owner of the Head of Alexander.

45.   MiBACT , Italy, and Vance (based on information provided to Vance by MiBACT), base their claim that the Head of Alexander is stolen property on two mistaken propositions:

A.  Defendants claim that the Head of Alexander was stolen and that MiBACT or Italy is the rightful owner because it purportedly was excavated in Italy after 1909 and therefore under Italy's patrimony law, it was and remains exclusively the Italian Republic's property and it is "stolen" property as to any other party seeking to claim ownership.

B.  Defendants claim the Head of Alexander is "stolen" property because they have not found any evidence of any export license authorizing the piece's export from Italy.

46.    There is no competent evidence, let alone sufficient evidence to establish

that the Head of Alexander comes within the ambit of Italy's patrimony laws for

several reasons.

47.    By the Defendant's own admission, it is quite possible that the Head of

Alexander was excavated as early as 1899.  Indeed, upon information and belief,

when MiBACT made its demand on Vance on or about February 22, 2018, it

represented to Vance that the Head of Alexander likely was excavated sometime

around 1899 and perhaps as late as 1903.

48.    On February 22, 2018, when Vance sought and obtained the warrant

to seize the Head of Alexander from Mr. Safani's gallery, Vance believed

the item to have been excavated around 1899.

49.    When shortly after the seizure, Vance met with Mr. Safani, Vance

provided a detailed reverse proffer concerning the evidence Vance had been

provided by MiBACT that purportedly proved that the Head of Alexander was

stolen.  Among other representations made by Vance at that reverse proffer was the

representation that Vance would prove that the Head of Alexander was excavated

between 1899 and 1903.  This was reportedly based on information supplied to

Vance by MiBACT.

50.    Vance later changed the claim concerning the evidence, to a claim

that the Head of Alexander was excavated after 1909 after it learned that its theory

that the item was stolen only had any indicia of validity if it claimed that the item was excavated after 1909. But, upon information and belief, Vance had proceeded with the former theory (excavation 1899-1903) to obtain the warrant and that excavation date would not have supported a finding of probable cause under any circumstances.

51.     After the seizure from the Plaintiff, the expert custodian from the Anitquarium Firense, who, as an agent for MiBACT and Italy, made the initial claim that the item was stolen, has admitted under oath that the item could well have been excavated as early as 1899. That fact, of course, if accurate, would not support the theory that it was "stolen" because it was excavated after 1909.

52.     Italy and MiBACT knew at the time they made the claim that the Head of Alexander was stolen that there was no competent evidence that the Head of Alexander was stolen; yet MiBACT demanded its seizure by Vance from the Plaintiff and Vance, working in concert with MiBACT, and at MiBACT's behest, unlawfully seized the Head of Alexander from the Plaintiff, based on "facts" that would not have supported the claimed violation of Italy's patrimony laws.

53.     Working with the MiBACT, and at MiBACT's behest, and based on an agreement with the MiBACT, Vance, together with the Homeland Security Department, without any sufficient independent investigation into whether the Head of Alexander actually was stolen property, and without any probable cause to

believe it was stolen property, sought and obtained a warrant for its seizure from Safani Gallery and unlawfully seized it from the Plaintiff.

54.   Upon information and belief, including information provided at the reverse proffer, the information Vance provided to the state court justice who issued the seizure warrant, did not support the theory that the Head of Alexander was stolen, based on its excavation after the enactment of Italy's patrimony laws and did not otherwise provide any probable cause to believe the Head of Alexander was stolen or that any cognizable crime had been committed and that the Head of Alexander could lawfully be seized.

55.   In the application for the seizure warrant prepared and submitted for the warrant to enter Safani Gallery and seize the Head of Alexander, Vance  submitted a cut and pasted statement from the attorney now serving as counsel for Italy  in this case, Ms. Leila Amineddoleh, purporting to be expert testimony on Italy's patrimony laws, offered to support  the claim that the Head of Alexander; but, at the time Ms. Amineddoleh's expert statement was provided with her authorization, knowing that her statement would be used to secure a warrant to seize the item from an American citizen, she knew nothing about the item at issue, nor the circumstances surrounding its excavation or any claim of theft, nor whether Italy's patrimony laws applied or somehow rendered the item stolen.

56.   Counsel for Italy in the instant matter, holds herself out on her website as a

"cultural heritage law expert for the New York District Attorney's Office ..." and touts her work with that office involving the "repatriation" of a number of artifacts in various cases.

57.    Additionally, counsel for Italy in the instant matter posted a message on Twitter on December 5, 2019, announcing that she could not represent Italy in this matter and that she had served as the "patrimony law expert" for "the warrant in this case."

58.    Shockingly, in a submission made in this Court under oath, Ms. Amineddoleh falsely denied ever making the Twitter post identified in the preceding paragraph.  Further, the post in question was deleted from the Twitter string in which it appeared; fortunately, it was preserved in archives and was recovered, demonstrating the false nature of the sworn representation made to this Court.  This appears to be consistent with the manner in which Italy has approached this matter from the start.

59.    At the time the Defendant enacted its patrimony laws, the Head of Alexander was not the type of artifact that fell within the ambit of the intended or stated coverage of the patrimony laws.

60.    The Defendant cannot establish, based on competent evidence when the Head of Alexander was exported, that at the time of such exportation the Defendant required or issued export licenses for the exportation of such pieces, or

that export licenses from the time of its export were and have been maintained or that any record of any export license from the time period of its export would still exist.

61.     The exportation of the Head of Alexander without an export license does not transmute the Head of Alexander into stolen property or otherwise lead to the legal conclusion that it has the status of stolen property.

**C. The Defendants Have No Legitimate Claim of Ownership**

62.     According to Vance, at the time of the seizure, MiBACT claimed that after the excavation of the Head of Alexander, likely around 1899, the Head of Alexander was placed in a museum owned and run by the Italy and its agents; but in the limited discovery conducted on agreement between Vance and Safani, no competent proof to support that claim was produced by the Defendants after direct inquiry by Safani.

63.     MiBACT claims that in the course of an inventory that Italy's agents purportedly conducted with respect to objects at that museum, sometime around 1958, they supposedly noticed that the Head of Alexander was missing from its inventory and Italy's agents made a notation on a card as to the piece that it was lost or missing ("perdute").  There was no indication made at any time, by anyone, to anyone, in any forum, that the piece was stolen; nor is there any competent evidence that the piece ever was actually in

the museum's inventory.

64.     Defendants Italy and MiBACT have at all times relevant to this action been aware of law enforcement agencies and other agencies in Italy, run and controlled by Italy or MiBACT, and around the world to which the theft of artifacts like the Head of Alexander are to be reported if there is a belief that such a piece has been stolen.

65.     On multiple occasions since 1958, the Head of Alexander has been widely and publicly offered for sale and displayed in catalogues fully accessible to Defendants, including some catalogues actually monitored and examined by Defendants, and has been on public display at public auctions and other exhibitions; yet not once has any Defendant ever claimed that the Head of Alexander was stolen or was its property until February 19, 2018.

66.     At no time between 1958 and 2018, or any other time up until February 19, 2018 did Defendants Italy or MiBACT, or any of their agents ever make a claim, file a notice, provide any information, or otherwise in any way, shape, or form indicate to any agency or anyone else that the Head of Alexander was stolen.

67.     Defendants Italy and MiBACT were aware at all times relevant to this action that their law enforcement agencies, and particularly those divisions of their law enforcement agencies charged with monitoring the theft and illicit trade in artifacts and antiquities belonging to Italy around the world regularly monitor

auctions held by Sotheby's and other auction firms to determine whether any stolen items belonging to Italy are being offered for sale. Indeed, MiBACT specifically examined the Sotheby's catalogue that displayed the Head of Alexander; yet neither Defendant nor any other agency took any steps ever to claim the Head of Alexander was stolen or to indicate to any monitoring or reporting agency that it ever had been stolen.

68.  Any claim by Defendants to ownership of the Head of Alexander is barred by the applicable statute of limitations.

69.  Any claim by Defendants to ownership of the Head of Alexander is barred by laches.

70.  Any claim by Defendants to ownership of the Head of Alexander is barred by waiver.

71.  Based on international conventions to which Defendant Italy is a signatory and based on principles of customary international law any claim by Defendants for recovery of the Head of Alexander must be accompanied by just compensation to Safani as a bona fide good faith purchaser for value of the Head of Alexander.

**Under 28 U.S.C. §§1605(a)(3) and (a)(5), Italy and MiBACT Are Not Immune from Suit.**

72.  Plaintiff's rights in property located in the United States - the Head of Alexander - were taken by the Defendants Italy and MiBACT, in concert with and through Defendant Vance and other agents acting at the behest of Defendants Italy

and MiBACT, in violation of international law.  Among the violations of international law committed are the following illustrative examples (there are more):

A. Failure to meet the obligations imposed under Articles 5(d)&(g) of the 1970 UNESCO Convention;

B.  Failure to meet the obligations imposed under Article 7 of the 1970 UNESCO Convention, by circumventing diplomatic channels with its claim, in an effort to avoid its obligation to pay Plaintiff just compensation if it prevailed in showing that the Head of Alexander actually was stolen, by failing actually to pay or offer to pay just compensation, and by making a false claim that the Head of Alexander was stolen, knowing there is no competent evidence of the same.  *See also*, MOU signed by Italy and the USA on January 19, 2001;

C.  Violation of the right to a fair trial, recognized in various international instruments, including the Article 10 of the Universal Declaration of Human Rights (U.N. General Assembly, December 10, 1948); and Article 17 of the same which prohibits the arbitrary deprivation of one's property.  *See also*, European Convention of Human Rights of 1950 and Article 1 of amending Protocol of 1952.

D.  Filing a false claim of theft and depriving a person of his rights to his property without cause and without just compensation violates normative principles of customary international law.

73.    MiBACT  is an agency or instrumentality of Italy as defined in 28 U.S.C. §1605(a)(3) and it is and at all times relevant to this case has been engaged in commercial activity in the United States.  Its commercial activity includes, but is not limited to, organizing and running exhibits, offering merchandise for sale in the United States, promoting Italian tourism in the United States, publishing books and periodicals for distribution and sale in the United States, other commercial activities identified hereinbefore, and much more.

74.    The Defendants and their agents have tortiously caused Plaintiff to lose his valuable property and Plaintiff has suffered money damages because of the Defendants' tortious acts and omissions, all undertaken by agents of the Defendants acting pursuant to their employment by the Defendants and in the scope of their office or employment, with such tortious conduct occurring entirely in the United States.

75.    The tortious conduct engaged in by Defendants Italy and MiBACT has included, but is not limited to, knowingly and intentionally making a false claim to Vance that the Head of Alexander was stolen and demanding the seizure and transfer of the Head of Alexander to these Defendants, based on this false

claim.

76.    There is no countervailing interest in abstention or comity or any other

related principle that bars any of the requested relief.  The presiding

justice in the conflicting state court "Turnover" proceeding has asserted that this

Court is the more appropriate forum to adjudicate the issues in this case and stayed

the state court action so that the underlying matter can be litigated in this Court.

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment – Declaration of Ownership)**
**(All Defendants and Defendant *in rem*)**

77.    Plaintiff repeats and re-alleges each of the foregoing paragraphs,

incorporating them here by reference.

78.    Plaintiff purchased the Head of Alexander as a bona fide good faith

purchaser for value and has acted in good faith at all times.

79.    There is no competent evidence to support any claim that the

Head of Alexander was stolen or that anyone other than Safani is the rightful

owner of the Head of Alexander.

80.    Any claim Italy or MiBACT might have had that either was the rightful

original owner of the Head of Alexander or maintains a right of ownership has

been extinguished and is otherwise barred by principles of law and equity.

81.    There is no basis for the forfeiture or repatriation of the Head of Alexander

under U.S. or international law.

82.     Safani is the true and rightful owner of the Head of Alexander to the exclusion of all others and may lawfully sell or keep the Head of Alexander and Safani seeks a declaratory judgment to this effect.

83.  Alternatively, if Safani transfers the Head of Alexander to Italy or MiBACT, he is entitled to just compensation as a matter of law and Plaintiff asks this Court to so declare.

## COUNT II
### (Conversion – All Defendants)

84.     Plaintiff repeats and re-alleges each of the foregoing paragraphs, incorporating them here by reference.

85.     Plaintiff was a bona fide good faith purchaser for value of the Head of Alexander and is the true, lawful, and exclusive owner of the Head of Alexander.

86.     Defendants have no legitimate claim to ownership of the Head of Alexander.

87.     Defendant Vance, acting on the demand of Defendants Italy and MiBACT, and as their agent, exclusively for the benefit of Defendants Italy and MiBACT, and in furtherance of the unlawful scheme of Defendants Italy and MiBACT, or on his own wrongfully took and maintains custody of the Head of Alexander, based on Defendants Italy's and MiBACT's false claims and demand for the seizure and turnover and has refused Plaintiff's requests for the return of the Head of

Alexander.

88.    As agent for Defendants Italy and MiBACT and in response to their demand, Vance and the other Defendants seek to permanently deprive Plaintiff of the Head of Alexander and to cause the Head of Alexander to be transferred to the direct possession of the Italy and MiBACT and ultimately to their ownership.

89.    Plaintiff has a lawful possessory right and ownership interest in the Head of Alexander.

90.    Defendant Vance has intentionally and without lawfully obtained authority, assumed or exercised control and dominion over the Head of Alexander, valuable personal property belonging to Safani, thereby interfering with Safani's right of possession, in derogation of Safani's rights with respect to the Head of Alexander.

## Count III
### (Replevin – All Defendants)

91.    Plaintiff repeats and re-alleges each of the foregoing paragraphs, incorporating them here by reference.

92.    The Head of Alexander currently is in the possession, custody, and control of Defendant Vance, acting on his own accord and as an agent for the other Defendants, for the purpose of permanently depriving Safani of the right to possess and own the Head of Alexander in favor of the other Defendants.

93.    Plaintiff has a possessory right to the Head of Alexander that is superior to the possessory right of the Defendants or of anyone else.

# COUNT IV
## (Unjust Enrichment – Defendants Italy and MiBACT)

94.     Plaintiff repeats and re-alleges each of the foregoing paragraphs, incorporating them here by reference.

95.     By seizing or causing to be seized the Head of Alexander, Defendants have received and seek to receive a benefit, including the expropriation of Safani's property for the use and gain of Defendants Italy and MiBACT.

96.     By doing so and by continuing to demand that Defendant Vance possess the Head of Alexander, to which he and they have no lawful claim, interest, or right, for the exclusive purpose of transferring it to them without their payment of just compensation, Defendants Italy and MiBACT have been and will continue to be unjustly enriched.

97.     All Defendants' actions constitute a *de facto* forfeiture without due process or just compensation in violation of international law and United States law, including principles encompassed in international conventions to which Italy is a signatory.

98.     Equity, good conscience, and principles of United States and international law demand that the Defendants pay damages to the Plaintiff based on the unlawful seizing and prospective repatriation of the Head of Alexander, Safani's lawfully acquired property, and it is unjust to permit the Defendants to retain the benefit of their actions without just compensation to the Plaintiff.

99.    Safani is entitled to damages representing the full fair-market value of the Head of Alexander and the value of its expenses incurred in connection with Defendants' actions as described herein, plus interest on the same.

## **COUNT V**
### **(42 U.S.C. Sec. 1983 – Fourth Amendment Violation – Defendant Vance)**

100.    Plaintiff repeats and re-alleges each of the foregoing paragraphs, incorporating them here by reference.

101.    Defendant Vance's actions in this case in obtaining a warrant based on a reliance on facts provided by MiBACT, which did not actually establish probable cause for a seizure, without any meaningful independent investigation, and Vance's seizure of the Head of Alexander constituted an unreasonable seizure and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

102.    Defendant Vance's actions and his agents' actions were taken under color of state law and were taken in violation of law that was clearly established at the time.

103.    There was no lawful basis for believing that the Head of Alexander was stolen at the time the warrant was sought and issued and, indeed, on information and belief, the alleged facts supporting the false claim that the Head of Alexander was stolen have materially changed since the warrant was issued, further demonstrating the lack of probable cause for the seizure.

104.    Among other errors by Defendant Vance, in overly relying on assertions

made by MiBACT, Vance ignored the well documented history of unmerited and

unsupported claims by Italy and MiBACT that artifacts were stolen when, in fact,

there was no such evidence and, in light of the theory used in this case to make the

claim that the Head of Alexander was stolen, Defendant Vance wrongly ignored

evidence undermining that theory and erred by failing to undertake its own

meaningful investigation prior to seeking the warrant.  *See e.g., A Tale of Two*

*Seizures:  The Caribieri TPC*, Cultural property News (July 20, 2021).

https://culturalpropertynews.org/a-tale-of-two-seizures-antwerp-basel-and-the-

carabinieri/.

105.    Plaintiff suffered damages from this violation of his constitutional rights and

demands the return of his property that was unlawfully taken from him.

**COUNT VI**
**(42 U.S.C. Sec. 1983 – 14th Amendment Due Process Violation**
**(Defendant Vance)**

106.    Plaintiff repeats and re-alleges each of the foregoing paragraphs,

incorporating them here by reference.

107.    Defendant Vance and his agents' actions, taken at all times under color of

state law and in contravention of clearly established law, constituted an unlawful

taking and continuing deprivation of Plaintiff's property without making just

compensation and without due process of law in violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

108.  Defendant Vance unlawfully took Plaintiff's valuable property – the Head of Alexander – and is trying to permanently deprive Plaintiff of its property without just compensation through a state court proceeding that lacks jurisdiction where ownership of the object is at issue and which, at best, only provides a summary proceeding for a determination of the rights at issue and which, by that court's own account, is not the appropriate forum for such a matter, even if it had jurisdiction. Plaintiff has been denied due process by Vance's actions.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. On Count I of the Complaint:

A.  Give notice to all who claim to have an interest in the Head of Alexander to appear and present any and all proof in support of their claim to an interest in the Head of Alexander;

B.  Enter a declaratory judgment consistent with the language set out in Count I, and declaring that Safani is the true, lawful, and exclusive owner of the Head of Alexander and that Defendants must immediately relinquish possession of the Head of Alexander and return it to Safani, for its sale or whatever unrestricted use Safani wishes to make of the Head of Alexander.

2.　　On Counts II through IV of the Complaint, award Safani just, fair, and appropriate damages in an amount to be proven at trial.

3.　　On Counts V and VI, (a) enter a declaratory judgment finding that Defendant Vance's actions violated Safani's rights under the Fourth and Fourteenth Amendments to the Constitution; (b) enter an injunction requiring that the Head of Alexander be maintained in this District at all times until it is returned to Safani as the rightful owner, (c) enjoin, pursuant to 28 U.S.C. Sec. 1651 (the All Writs Act), any further proceedings in the conflicting state court proceedings initiated by Defendant Vance, and (4) order the return of the Head of Alexander to Safani as the rightful owner.

4.　　An award of interest, costs, disbursements, and reasonable attorney's fees incurred in this action, including the same incurred as a result of Defendants' actions to which this lawsuit is directed and in connection with this lawsuit.

5.　　Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: August 23, 2021

　　　　　　　　　　　　 /s/ David I. Schoen
　　　　　　　　　　　David I. Schoen (DS 0860)
　　　　　　　　　Counsel for Plaintiff, Safani Gallery, Inc.

David I. Schoen
Attorney at Law

2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 334-395-6611
Facsimile: 917-591-7586
E-Mail: DSchoen593@aol.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and accurate copy of the foregoing

Proposed Amended Complaint to be served on all counsel of record by filing the

Same electronically through the Court's ECF system on this 23rd day of August,

2021.


 /s/ David I. Schoen
David I. Schoen (DS 0860)
Counsel for Plaintiff, Safani Gallery, Inc.

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 334-395-6611
Facsimile: 917-591-7586
E-Mail: DSchoen593@aol.com