IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Safani Gallery, Inc.,
      Plaintiff,

v.             Civil Action No. 1:19-cv-10507-VSB

The Italian Republic,
      Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION [ECF# 53] TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [ECF# 51] AND INCORPORATED MEMORANDUM OF LAW**

On August 2, 2021, this Court entered its Opinion & Order [ECF# 50], granting Defendant's motion to dismiss under Rule 12(b)(1) [ECF## 22-24], denying Plaintiff's motion for leave to file a second amended complaint [ECF## 36-37], and providing leave to the Plaintiff to renew its motion for leave to amend [ECF# 50 at 12].

On August 23, 2021, Plaintiff timely filed a renewed motion for leave to file a second amended complaint and attached to that motion a proposed second amended complaint and a redlined version of the earlier proposed second amended complaint to demonstrate the changes between the earlier proposed version and the proposed second amended complaint proposed with the renewed motion for leave to file it [ECF## 51 - 51-3].

On September 3, 2021, Defendant filed its opposition [ECF## 53, 54] to the Plaintiff's renewed motion for leave to file a second amended complaint [ECF## 51 - 51-3].

Plaintiff, Safani Gallery, Inc., now files its reply to the Defendant's opposition.[1]

---

[1] Defendant's opposition is comprised of two documents - a Declaration from defense counsel [ECF# 54] and a memorandum of law [ECF# 53].  It is not clear what purpose the Declaration is intended to serve.  It consists of two paragraphs.  The first declares that the declarant is an adult and that "[T]he evidence in the foregoing Declaration is based on (her) personal knowledge" [ECF# 54, ¶1]; but there is no "foregoing Declaration" and therefore certainly no "evidence" based on "personal knowledge."  The second paragraph simply provides that the Declaration, which declares nothing of any substance - no relevant supporting facts, etc. - is submitted in

In reply, Plaintiff will address some of the Defendant's specific assertions. Those that are not addressed are not conceded to have any merit; rather no further discussion is needed. First, Plaintiff will give a brief overview.

Defendant's opposition to the Plaintiff's renewed motion to dismiss is long on vitriol and misplaced righteous indignation. It often argues based on Defendant's version of the merits of the case, while purporting to be limited to subject matter jurisdiction. Defendant complains throughout that the Plaintiff is unfairly attempting to drag it into court in this country, in a manner that is unduly burdensome and vexatious and its protestations do not stop there. Italy doth protest too much, methinks.[2] Let's take a step back and take a look again at what has happened here.

Plaintiff, Safani Gallery, Inc., is one of the world's most respected and reputable artifacts dealers, earning its well-deserved sterling reputation for generations. It bought the Head of Alexander after it had been widely displayed and advertised and offered for sale at repeated auctions throughout the world for many decades, with never so much as the rumor of a claim made ever by Italy that it was stolen or that it was somehow its property, notwithstanding its continual monitoring of the catalogues in which it was advertised, the auctions at which it was offered for sale, and the fairs and other exhibitions in which it was displayed [ECF# 29-1].

Even the New York County DA's office commended Mr. Safani for his due diligence with respect to the Head of Alexander [ECF# 29-3 at pdf 24] and the Assistant DA assigned to

---

support of the memorandum [ECF# 54, ¶2]. Accordingly, there is no reason to address the Declaration herein.

[2] See William Shakespeare, *Hamlet*, Act 3, Scene 2.

the case has acknowledged that Mr. Safani did not know and could not have known that anyone would ever claim the piece was "stolen" and, indeed, no one ever had. After conducting its model due diligence, Plaintiff paid a great deal of money to acquire the Head and, of course, its status as a bona fide good faith purchaser for value is beyond any dispute.

On February 20, 2018, a representative of Italy's Ministry of Culture and Tourism ("MIBACT") for the first time contacted the New York County DA claiming the Head was stolen - not because there was any evidence whatsoever of any theft; but based on a theory that it belonged to Italy under Italy's patrimony laws and that they could not find any record of an export license for the piece and two days later, this same MIBACT representative sent a "demand" to the New York County DA that the piece be "return(ed)" to Italy [ECF# 29-2 at padf 2].

The very same day, having never before heard of the piece and with no independent evidence that the piece ever was stolen, the New York County DA, in direct response to MIBACT's demand obtained a warrant to seize the piece from Safani Gallery and seized it. It seized it solely and exclusively for one purpose - not for any ongoing investigation, not for any temporary investigative purpose - but to take it from Mr. Safani and deliver it to MIBACT and Italy as they had demanded [ECF# 29-3]. And the New York DA obtained the warrant (Plaintiff has asked to have jurisdictional discovery to examine the warrant application) in significant part based on an affidavit provided from the lawyer now serving as the Defendant's lawyer, who first boasted on social media about her role in the seizure, but who then, while this lawsuit was pending and with her role placed at issue, falsely denied under oath before this Court (with no consequence) making the relevant social media post boasting of her role, with the same somehow

getting deleted from the chain of posts in which it had appeared (recovered forensically by the Plaintiff).

The warrant application is a key piece of evidence both with respect to Italy/MIBACT's role in the seizure and because it likely further reveals the false nature of Italy/MIBACT's claim. At the time of the warrant application (and the seizure), the DA represented to the Plaintiff that Italy/MIBACT claimed that the Head was excavated between 1899-1903, which would have placed its excavation before the application of the patrimony laws - the basis for Italy/MIBACT's ownership claim. The claim was later changed for the Turnover Application to an excavation date that would bring it within the patrimony law's coverage; but the limited discovery provided during the state proceeding led to the admission by Italy's purported expert and the director of the facility it claimed originally housed the piece, that it likely was excavated earlier, as originally claimed, completely undermining Italy's ownership claim. [ECF# 29-1]

Finally, notwithstanding Italy's decision in other instances to avail itself of our courts and appropriate diplomatic channels in the past when it felt it had a valid ownership interest in an artifact located in America, this time it chose to avoid any forum in which it actually would have to present the merits of its ownership claim, it circumvented the procedures in the international conventions to which it is a signatory, and it demanded the summary return of the piece through the New York DA's office, which acquiesced to the same by seizing the piece and then pursuing a process which a judge of the same court previously had held had no jurisdiction to adjudicate such matters where ownership is at issue [ECF# 29-1 at pdf 48-50], a position based on 100 years or more of consistent jurisprudence [ECF# 29-1 at pdf 6-21].

In short, it is the Plaintiff who is the badly and most unfairly aggrieved party here,

certainly not Italy, and the Defendant's feigned righteous indignation is misplaced. This Defendant well knows that if it ever had to actually address the merits of the case and submit itself to an adjudication of the question of who is the lawful owner of the Head of Alexander, in a court like this, competent to provide full due process, discovery, operating with rules of evidence and other appropriate procedures, its claim would fail miserably. On this conclusion the recent decision in *Republic of Turkey v. Christie's Inc.,* 2021 U.S. Dist. LEXIS 169215 (S.D.N.Y., September 7, 2021) is most instructive.

In that case, in which the country claiming ownership at least sought to have its claimed ownership rights adjudicated in an American court, brought an action against the holder of the piece and another who claimed ownership, as well as against the piece itself (as a defendant in-rem), to invite all claimants to come forward. But the country, making a claim of ownership, based on its patrimony laws and a claimed date of excavation, like Italy's/MIBACT's claim of ownership in the instant case (but with much stronger and more competent evidence than Italy/MIBACT have), lost, once the merits of its claims were fully fleshed out through discovery and expert testimony. Turkey could not prove its claim there, just as Italy knows it cannot prove its claim here and so it seeks to avoid having to appear and have the claim adjudicated on the merits with full discovery and full due process. That is what is going on here, notwithstanding the Defendant's misplaced protestations.

Defendant's opposition is characterized throughout by an erroneous claim that the proposed second amended complaint is futile because it raises no new claims. In fact, it alleges new facts, asserts new legal claims, adds two new defendants, and seeks additional relief from the earlier proposed version of the second amended complaint, as the redlined version clearly

demonstrates [ECF# 51-2].

Defendant, throughout its opposition mixes up merits arguments with jurisdictional arguments, arguing, for example, that the allegation that Italy/MIBACT knowingly made a false claim that piece was stolen (a claim undercut by their own expert in discovery) should be rejected because their claim purportedly was not false [ECF# 53 at 9, 16-17]. Each claim is supported by record evidence and, in any event, Defendant's sole claim at this juncture is that the Court lacks subject matter jurisdiction under FSIA. This is fundamentally not a juncture for the Court to make credibility findings on allegations made in the complaint or to decide mertis issues. *See Bell v. Hood*, 327 U.S. 678 (1946).

Defendant's opposition also appears to completely misunderstand portions of the proposed second amended complaint.[3] For example, Defendant argues that the civil rights claims now alleged in the proposed second amended complaint at Counts V and VI "cannot be used to assert jurisdiction over a foreign sovereign." [ECF# 53 at 21-22]. Nowhere does the proposed second amended complaint assert that the civil rights claims are intended to do anything of the sort and, in fact, it expressly provides that those claims go only to the newly added Defendant, Cyrus Vance, Jr., in his official capacity as New York County District Attorney [ECF# 51-3 at 27-28].[4]

---

[3] In addition to Defendant's misunderstanding of significant portions of the proposed second amended complaint, Defendant appears to misunderstand the procedural posture of the case, urging the Court to dismiss the case and remand the case to state court [ECF# 53 at 20]. The matter is before the Court on a motion for leave to amend and a "remand" is not within the range of options for this original action.

[4] Interestingly, there is authority within this Circuit holding that non-state actors can be liable under §1983 if they provide false information to the police and work in concert with the police in action that violates a persons constitutional rights. *See Biswas v. City of New York*, 973 F. Supp.

Similarly, Defendant argues that Plaintiff's "attempt at filing an *In Rem* proceeding is improper," arguing erroneously both that Plaintiff "is actually making a *quasi in rem* claim" and that one cannot use *in rem or quasi in rem* jurisdiction obtain jurisdiction over a foreign sovereignty [ECF# 53 at 20-21]. Plaintiff has invoked the Court's *in rem* jurisdiction, not *quasi in rem* jurisdiction.[5] and Plaintiff does not invoke the Court's *in rem* jurisdiction over the *res* in order to try to obtain jurisdiction over Italy or MIBACT. It is a claim simply over the ownership rights to the property that is at the heart of this litigation, with all would-be claimants invited to come and make their claim for the Court to assess.[6]

The Court has subject jurisdiction (e.g. federal question jurisdiction over the federal civil rights claims) and venue pursuant to the statutes listed in ¶¶1-3 of the proposed second amended complaint (with or without the FSIA basis for jurisdiction), and certainly with respect to the civil rights claims, the Court has *in personam* jurisdiction over Defendant Vance, and 28 U.S.C. §1655 permits the *in rem* action to go forward, with subject matter jurisdiction otherwise established, given the location of the *res* within this district. *See e.g., GP Credit Co., LLC v.*

---

2d 504 (S.D.N.Y. 2013). There also is contrary authority. *Vazquez v. Combs*, 2004 U.S. Dist. LEXIS 22137, 2004 WL 2404224 (S.D.N.Y., Oct. 22, 2004). Here, though, Plaintiff alleges that Italy/MIBACT acted in concert with the DA's office in conduct that amounted to tortious conduct, as joint tortfeasors, triggering §1605(a)(5) FSIA exemption. *See* ECF# 51-3 at ¶¶9, 52, 72 (Defendants working "in concert" to commit the unlawful taking); 84-99.

[5] "An action *in rem* is one in which the judgment of the court determines the title to property, and the rights of the parties, not merely between themselves, but also as against all persona at any time dealing with them or with the property upon which the court had adjudicated. *See* R.H, Graveson, *Conflict of Laws*, 98 (7th ed. 1974).

[6] Plaintiff would be happy to file the second amended complaint as a verified complaint if the Court grants the requested leave to file. If the Court permits some claims to go forward but not others, it will be redrafted to comply with any such Order, while preserving those claims which the Court declines to allow for any future appeal.

*Orlando Residence, Ltd*, 349 F.3d 976 (7th Cir. 2003)..

The proposed second amended complaint adds facts directed to addressing the Court's characterization of facts earlier alleged as being insufficient and it adds two new defendants, one of whom, the New York County District Attorney, is the party Defendant Italy has argued all along is the actor whose actions actually are at issue in the case [ECF# 23 at 21 - alleging that Plaintiff sued the wrong party, as it is the DA's actions that are at issue, not Italy's]. This is consistent with the Court's view of the case as expressed in its Opinion & Order [ECF# 50 at 8-9].

The following are examples of relevant factual allegations added by the proposed second amended complaint. While the Court found that there is no evidence the seizure was taken at the direction of Defendant (a finding with which Plaintiff respectfully takes exception. *See* ECF# 51-1 at 1-2, n.1), Plaintiff has alleged that the Defendant acted in concert with the DA with respect to the tortious conduct alleged. [ECF# 51-3 at ¶¶9, 52, 53, 72, making them joint tortfeasors. Plaintiff added factual allegations to demonstrate MIBACT's separate legal personality, [ECF# 51-3 at ¶6 all abundantly supported by the record [ECF# 37-2]. The proposed second amended complaint also adds allegations about the New York District Attorney's actions that constituted torts and constitutional rights violations both on its own and in concert with or at the behest of MIBACT [e.g. ¶¶29-32, 35][7] and it makes allegations that invoke this Court's *in rem* jurisdiction

---

[7] Italy inappropriately tries to make an argument on behalf of the New York County District Attorney that completely misses the mark and refers to a case that is completely irrelevant [ECF# 53 at 22, n.28]. A Plaintiff's right to seek to enjoin a prosecutor's actions that are inconsistent with federal law or that violate a party's federal constitutional rights has long been settled. *See Ex Parte Young*, 209 U.S. 123 (1908); *Trump v. Vance*, 140 S.Ct. 2412, 2428-2429, 207 L.Ed. 2d 907 (2020) (citing *Ex Parte Young*).

and it seeks a declaratory judgment as to its ownership [ECF# 51-3 at ¶¶8, 77-83].

The following are specific, somewhat random comments in reply to certain positions taken by the Defendant in its opposition to the motion at issue; most of the opposition irrelevant to the threshold question of whether to permit the amendment under the applicable standards as set out in Plaintiff's motion for leave to amend [ECF# 51-1].

At Page 4, n.3 of the opposition, Defendant the allegations in the proposed second amended complaint concerning Italy's failure ever before to claim the object was stolen "ignores art market practice ...." This is just completely made up on the fly. There are several internationally recognized agencies to which art or artifact theft is to be reported and there is no evidence(and none cited) to suggested reporting a theft makes it less likely to be recovered. This is just nonsense. The assertions in the opposition about MIBACT are directly contradicted in detail by Plaintiff's authoritative submissions on the issue, which are entitled to be taken as true. [ECF# 37-2]. They fully establish MIBACT's independent personality, commercial activity in the U.S. and its right to sue and be sued. Throughout its opposition, Italy argues and makes reference to the Court's findings to the effect that this was a seizure pursuant to a law enforcement action by the DA and Italy had no role in the seizure. This simply is wrong.

There is no evidence of any investigation, there was no criminal charge brought, nor crime committed; this was nothing other than a demand by MIBACT for the piece it falsely claimed was stolen, and the agreement by the DA to facilitate that demand, by seizing the piece and seeking to have it transferred permanently to Italy. This has been discussed at length throughout this litigation. Plaintiff's assertions on the subject are fully supported by both evidence and argument and it is at least entitled to an inference in support of its position. The

merits should be left to litigate, but not in the context of a Rule 12(b)(1) motion.

Defendant purports to rely on the decisions in *Aboutaam v. L'Office Federale De La Culture De La Confederation Suisse*, 2019 WL 4640083 (S.D.N.Y., Sept. 24, 2019) and *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808 (2d Cir. 2021), two related cases [See e.g. ECF# 53 at 12, 18]. While the cases involve one of the same exemptions at issue here under the FSIA, they are completely inapposite. They involved the seizure of items within the country's own borders, as part of an actual ongoing investigation and purportedly of a temporary nature. This case is nothing of the kind.

Defendant's assertions that it is not obligated to make just compensation for the seizure is belied by long established case law citing a taking without just compensation as a hallmark of conduct that violates international law. *See e.g., Hulton v. Bayerische Staatgemaldesammlungen*, 346 F. Supp. 3d 546, 550 (S.D.N.Y. 2000); See also expert witness Sterpi's Declaration at ECF# 29-1, pdf 52-53].

Plaintiff relies on the allegations in the proposed second amended complaint in further reply to the opposition, as well as all arguments previously made in this matter.

The bottom line is that the proposed second amended complaint states a claim for relief sufficient as well to satisfy FSIA exemptions (a)(3) and (a)(5) as alleged. Under any circumstances, the second amended complaint must be permitted to be filed as to Defendant Vance and Defendant-*in rem*, Head of Alexander and the litigation must go forward to, at a minimum, determine the rightful ownership of the Head of Alexander. If Italy's efforts to avoid this litigation are successful with this Court, so be it. The action will go on without Italy and that will be of Italy's own choice, subject to appeal.

Respectfully Submitted,

_/s/ David I. Schoen_
David I. Schoen (DS 0860)
Counsel for Plaintiff, Safani Gallery, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and accurate copy of the foregoing Reply to be served on all counsel of record by filing the same electronically through the Court's ECF system on this 13th day of September, 2021.

_/s/ David I. Schoen_
David I. Schoen (DS 0860)
Counsel for Plaintiff, Safani Gallery, Inc.

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 334-395-6611
Facsimile: 917-591-7586
E-Mail: DSchoen593@aol.com