UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                        :

SAFANI GALLERY, INC.,               :

                     :

                Plaintiff,  :

                     :             19-cv-10507 (VSB)

       - against -         :

                     :        **OPINION & ORDER**

                     :

ITALIAN REPUBLIC; MINISTERO DEI  :
BENE E DELLE ATTIVITA CULTURALIA :
E DEL TURISMO a/k/a MINISTRY OF  :
CULTURAL HERITAGE AND ACTIVITIES :
AND TOURISM; ALVIN BRAGG, JR., NEW :
YORK COUNTY DISTRICT ATTORNEY,  :

                     :
               Defendants,  :

                     :

HEAD OF ALEXANDER,         :

                     :

              *In Rem*    :
               Defendant.  :

                     :
-----------------------------------------------------------X

<u>Appearances</u>:

David I. Schoen
Attorney at Law
Montgomery, AL
*Counsel for Plaintiff*

Corey S. Shoock
Patricia Jean Bailey
New York County District Attorney's Office
New York, NY
*Counsel for Defendant New York County District Attorney*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Acting on a tip from an employee of Italy's cultural ministry, the Manhattan District

Attorney ("DA") obtained a warrant to seize a Roman statue, allegedly stolen decades ago from

Italy.  The DA seized the statue from the Safani Gallery in Manhattan.  Following the seizure, the DA initiated proceedings to return the statue to Italy.

The Safani Gallery sued Italy in this Court, seeking among other things a declaratory judgment that the gallery was the lawful owner of the statue.  I dismissed the complaint because Italy, as a foreign sovereign, is immune from suit in federal court.  Safani then amended its complaint, adding the Italian Ministry of Culture Heritage and Activities and Tourism ("MiBACT" or the "Ministry") and the DA[1] as defendants.  Safani also asserted new claims that the DA violated its Fourth and Fourteenth Amendment rights.

Italy, the Ministry, and the DA now seek dismissal of the Second Amended Complaint.  Because I conclude that Italy and its cultural ministry are immune from this action under the Foreign Sovereign Immunities Act ("FSIA"), their motion to dismiss is GRANTED.  In addition, because I find that Safani lacks Article III standing to bring its federal claims against the DA, the motion to dismiss the federal claims against the DA is GRANTED.  With regard to the remaining claims, since no federal claims remain, I decline to exercise supplemental jurisdiction and DISMISS the remaining state-law claims without prejudice.

## I.    **Factual Background**[2]

### A.  *The Purchase and Seizure of the Head of Alexander*

This case involves a dispute over a Roman statue known as the Head of Alexander ("Head").  (Doc. 66 ("SAC") ¶ 8.)  The Head is depicted below:

---

[1] Safani sued Cyrus Vance, Jr., who the Second Amended Complaint describes as the "New York County District Attorney."  (Doc. 66 ("Second Am. Compl." or "SAC") ¶ 7.)  In this Opinion & Order I refer to this office as the Manhattan District Attorney's Office or the "DA."  By operation of Federal Rule of Civil Procedure 25(d), Alvin Bragg is substituted as a party as the current Manhattan District Attorney.

[2] The following factual summary is drawn in part from the allegations of the Second Amended Complaint, which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  I take judicial notice of the public records of the state-court proceedings related to this action and draw from



(Doc. 83-1 at 2.)  In June 2017, Plaintiff Safani Gallery purchased the Head at auction in England for approximately $150,000.  (SAC ¶¶ 11–13.)  Safani brought the Head to New York in August 2017.  (*Id*.)  Before purchasing the statue, Safani investigated its origins and, after exercising "due diligence," confirmed to its satisfaction that the Head was not missing or stolen. (*Id*. ¶¶ 13–24.)  Safani alleges that the statue "never was stolen."  (*Id*. ¶ 24.)

An employee of the Roman Forum Archaeological Site (the "Forum") noticed the Head in Safani's sales catalogue, and in February 2018 filed a claim with the Ministry[3] that the statue matched one that had been logged as missing from the Forum's archives.  (SAC ¶ 25.)  On February 22, 2018, a MiBACT employee contacted the office of Defendant the Manhattan DA, informed the DA that the Head was the stolen property of Italy, and demanded the statue's repatriation.  (SAC ¶ 26.)

Acting on the information from MiBACT, the DA obtained a warrant to seize the Head from the Safani Gallery.  (SAC ¶ 28.)  The warrant, supported by an affidavit from a Special

---

these filings as well.  *See Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  Nothing in this factual summary should be construed as a finding of fact.

[3] Defendant MiBACT's Italian name is "Ministero dei Bene e della Attivita Culturali e del Turismo."  (SAC at 1.)

Agent of the United States Department of Homeland Security, stated that the statue was evidence of the crime of Second-Degree Criminal Possession of Stolen Property.  (Doc. 83-1.)  Officers executed the warrant at the Safani Gallery in Manhattan and seized the Head, transferring it to the custody of the DA.  (SAC ¶ 28.)

Safani alleges that MiBACT's claim that the Head of Alexander was stolen is "false" and unsupported, that the affidavit supporting the warrant was based entirely on the information MiBACT provided to the DA's office, and that it therefore "did not provide probable cause for the seizure of the Head of Alexander."  (SAC ¶ 29.)

### B.  *State Turnover Proceeding*

Following the seizure, the DA submitted a Turnover Application in state court pursuant to New York Penal Law § 450.10, which provides for the return to the "owner" of allegedly stolen property that is in the custody of a district attorney following a seizure.  (Doc. 83-4.)  Safani challenged the Turnover Application, and on November 13, 2019, the Supreme Court of the State of New York, New York County held a hearing to resolve the dispute.  (*See* Doc. 83-25 ("Hearing Tr.").)  The court declined to exercise its jurisdiction to adjudicate ownership of the Head given the complexities of the case, and stayed proceedings so that Safani could adjudicate its ownership claim in this Court.  (*Id*. at 49–54.)

### II.  <u>Procedural History</u>

Safani filed this action against The Italian Republic ("Italy") on November 12, 2019, the day before the state-court hearing on the challenge to the Turnover Application.  (Doc. 1 ("Compl.").)  In its complaint, Safani asserted claims for a declaratory judgment, conversion, replevin, and unjust enrichment.  (*See id*.)  The complaint sought damages, a declaratory judgment that Safani was the owner of the Head of Alexander, and an order that Italy "and its

agent, the Manhattan District Attorney's office, [] immediately relinquish possession of the Head of Alexander and return it to Safani[.]"  (*Id*. at 15.)

Safani amended its complaint, (Doc. 20), and Italy moved to dismiss for lack of subject-matter jurisdiction based on the FSIA, 28 U.S.C. §§ 1604–1605, (Doc. 22).  In an Opinion & Order dated August 2, 2021, (Doc. 50), I held that the FSIA prevented my exercise of jurisdiction over Italy and therefore granted its motion to dismiss.  *See Safani Gallery, Inc. v. Italian Republic*, No. 19-CV-10507, 2021 WL 3292262 (S.D.N.Y. Aug. 2, 2021) (*Safani I*).  In that Opinion & Order, I granted Safani leave to file another motion to amend its complaint.  *Id*. at *6.

Plaintiff timely filed a motion to amend along with its proposed Second Amended Complaint.  (Doc. 51.)  The proposed Second Amended Complaint ("SAC") added MiBACT and the DA as Defendants, and added the Head of Alexander as an "In Rem Defendant."  (Doc. 53-2 at 1.)  The proposed SAC modified some of Safani's claims and added others.  Specifically, it asserted the claim for a declaratory judgment against "All Defendants and Defendant *in rem*," (*id*. at 26), the claims for conversion and replevin against "All Defendants," (*id*. at 27–29), and its unjust enrichment claim against Italy and MiBACT, (*id*. at 29–30).  The proposed SAC asserted two new claims against the DA under 42 U.S.C. § 1983, asserting that the DA violated Safani's Fourth Amendment rights with an unconstitutional seizure, and that the DA violated its Fourteenth Amendment rights with an unconstitutional taking.  (*Id*. at 30–32.)  The proposed SAC also includes several additional or modified factual allegations that I will reference in this Opinion & Order.

I granted Safani leave to file its SAC, explaining that I would address Italy's arguments in opposition to the amendment along with the Manhattan DA's arguments responding to the SAC.  (Doc. 63.)  Thereafter, Safani filed the SAC, (Doc. 66 ("SAC")).  The DA moved to dismiss the

SAC on April 18, 2022.  (Doc. 82).  In support, the DA submitted a memorandum of law, (Doc. 84 ("Mem.")), and a supporting declaration, (Doc. 83).  Plaintiff submitted an opposition to the motion to dismiss on July 5, 2022.  (Doc. 92 ("Opp'n").)  The DA filed its reply on August 19, 2022.  (Doc. 96 ("Reply").)

III.    **Legal Standards**

Before me are Plaintiff's Second Amended Complaint, (Doc. 66), and the Manhattan DA's fully briefed motion to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Docs. 82, 83, 84, 92, 96).  Although I permitted Safani to file the Second Amended Complaint, I held Italy's arguments in opposition to the filing of the Second Amended Complaint in abeyance.  (Doc. 63.)  I now treat Italy's fully briefed opposition to the Second Amended Complaint, (Docs. 53, 54, 58, 62), as a motion to dismiss the Second Amended Complaint.  *See Guzman v. Barr*, No. 19-CV-7163, 2021 WL 135909, at *4 (S.D.N.Y. Jan. 14, 2021) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

A.  *Rule 12(b)(1):  Lack of Subject-Matter Jurisdiction*

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as a "threshold question" (internal quotation marks omitted)).  Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power

and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014) (cleaned up). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted).

### B.  *Rule 12(b)(6):  Failure to State a Claim*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  I may take judicial notice of the public records of the state-court proceedings related to this action as well.  *See Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)

### IV.    Discussion

I first address Italy's opposition to the Second Amendment Complaint.  Specifically, I address the threshold issue of subject-matter jurisdiction.  Because I find that subject-matter jurisdiction is lacking over Italy and MiBACT, Italy's motion to dismiss is GRANTED and the claims against Italy and MiBACT are dismissed.

With regard to the Manhattan DA's motion to dismiss, although the motion raises numerous issues, I first address the threshold question of whether Safani has standing to pursue its federal claims against the DA.  I conclude it does not have standing and that I lack subject-matter jurisdiction over the federal claims.  Without any diverse defendant or a federal question, the case lacks an original basis for federal jurisdiction over the claims that remain, and I decline to exercise supplemental jurisdiction.  Therefore, the Second Amended Complaint is DISMISED.

### A.  *Italy's Opposition on Foreign Sovereign Immunities Act Grounds*

Italy opposed my granting Safani leave to file its Second Amended Complaint, arguing the amendments do not change my prior conclusion that subject-matter jurisdiction is lacking under the FSIA, 28 U.S.C. §§ 1604–1605.  (Doc. 53 at 5–16.)  Treating the opposition as a

motion to dismiss, I agree that Italy and MiBACT are immune under the FSIA, and therefore dismiss them from this action.

### 1. The FSIA

As I previously explained in *Safani I*, 2021 WL 3292262, at *2–3, under the FSIA, "a foreign state, including its agencies and instrumentalities, is presumptively immune from suit in U.S. courts unless a specific FSIA exception to such immunity applies." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 388 (2d Cir. 2000); *see also* 28 U.S.C. § 1604. "In a motion to dismiss on FSIA grounds, the movant must first make a *prima facie* showing that it is a 'foreign state' under the Act." *Freund v. Republic of Fr.*, 592 F. Supp. 2d 540, 552 (S.D.N.Y. 2008). "Once the movant makes that showing, the opposing party 'has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted.'" *Id.* (quoting *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). "Where the plaintiff satisfies its burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 204 (2d. Cir. 2018) (citation omitted).

### 2. Italy and MiBACT Are Foreign States Under the FSIA

The FSIA provides immunity to "a foreign state" subject to certain exceptions. 28 U.S.C. § 1604. The statute's definition of "foreign state . . . includes . . . an agency or instrumentality of a foreign state." *Id.* § 1603(a). Safani's Second Amended Complaint pleads that Defendant Italy is a "foreign state" and that Defendant MiBACT is "an agency and instrumentality of Italy." (SAC ¶¶ 5–6.) Both of these defendants are therefore "foreign states" based on the SAC, and the

FSIA prevents a federal court from exercising jurisdiction over them unless an exception applies.

Plaintiff does not argue otherwise.

### 3. FSIA's Commercial Activity Exception Does Not Apply

Safani, by alleging that MiBACT "engages in commercial activity in the U.S. and

throughout the world such that its 'core functions' are commercial," (SAC ¶ 6; *see also id*. ¶ 73),

seems to invoke the commercial activity exception to FSIA's grant of immunity. *See* 28 U.S.C.

§1605(a)(2). I find that this exception does not apply.

The commercial activity exception to FSIA provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United
> States . . . in any case . . . in which the action is based [1] upon a commercial activity
> carried on in the United States by the foreign state; or [2] upon an act performed in
> the United States in connection with a commercial activity of the foreign state
> elsewhere; or [3] upon an act outside the territory of the United States in connection
> with a commercial activity of the foreign state elsewhere and that act causes a direct
> effect in the United States[.]

*Barnet as Tr. of 2012 Saretta Barnet Revocable Tr. v. Ministry of Culture & Sports of the Hellenic*

*Republic*, 961 F.3d 193, 199 (2d Cir. 2020) (quoting 28 U.S.C. § 1605(a)(2)). The Second

Circuit has explained that the third clause applies to actions such as this where plaintiff "do[es]

not challenge the mere sending of the [request for repatriation,] but [rather] the claim of

ownership over the [artwork] that the [request] expresses." *Id.* at 200. The only action Plaintiff

alleges MiBACT took with respect to the artwork was to send a message to the DA's office

informing it of Italy's claim of ownership over the Head. (SAC ¶¶ 26–27.) Therefore, for the

commercial activity exception to apply, that action must have been undertaken "in connection

with" MiBACT's commercial activity. *Barnet*, 961 F.3d at 200 (quoting 28 U.S.C. § 1605(a)(2)).

MiBACT did not send its message to the DA about the Head in connection with

commercial activity. To the contrary, the Second Circuit has explained that "[n]ationalizing

property is a distinctly sovereign act," as is "enforcing laws that regulate ownership and export

of nationalized artifacts." *Id.* at 201 (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 361–62

(1993)). Even on reply to Italy's opposition to Plaintiff's motion for leave to amend, which

extensively discussed *Barnet*, (Doc. 53 at 12, 18, 22), Plaintiff does not attempt to address this

precedent, (*see generally* Docs. 51-1, 58). Plaintiff's general, vague assertion that "MiBACT

regularly sponsors exhibits of artifacts in the United States and engages in commercial activity in

association with those exhibits" is insufficient, (SAC ¶ 6), in particular in light the binding

precedent of *Barnet*. *See* 961 F.3d at 203 n.11 (rejecting similar argument). Safani's allegation

that MiBACT's message purposefully misrepresented Italy's ownership of the statue does not

change this conclusion, (SAC ¶¶ 26–27), because the applicability of FISA's commercial activity

exception does not turn on the alleged wrongfulness of the underlying conduct, *see Kato v.

Ishihara*, 360 F.3d 106, 110–11 (2d Cir. 2004) (explaining that under the FSIA, "the commercial

character of an activity shall be determined by reference to the nature of the course of conduct or

particular transaction or act, rather than by reference to its purpose" (quoting 28 U.S.C.

§ 1603(d))). Therefore, the FSIA commercial activity exception does not apply.

### 4.   FISA's Expropriation Exception Does Not Apply

Even though I have already rejected this contention, *see Safani I*, 2021 3292262, at *4–5,

Safani's Second Amended Complaint again alleges that Italy and MiBACT are not immune

because FSIA's expropriation exception covers their conduct. (SAC ¶¶ 72–73.) The exception

applies:

> [I]n any case in which rights in property taken in violation of international law are
> in issue and that property or any property exchanged for such property is present in
> the United States in connection with a commercial activity carried on in the United
> States by the foreign state; or that property or any property exchanged for such
> property is owned or operated by an agency or instrumentality of the foreign state
> and that agency or instrumentality is engaged in a commercial activity in the United

States.

28 U.S.C. § 1605(a)(3); *see also Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d

247, 251 (2d Cir. 2000).

In *Safani I*, I determined the exception did not apply for three independent reasons.  First,

the Head was not "taken," because neither Italy nor MiBACT presently have custody of the

Head, and the entity that does have custody—the Manhattan DA—is not Italy or MiBACT's

agent.  *Safani I*, 2021 WL 3292262, at *4.  Second, any taking of the Head was not "in violation

of international law," because the DA seized it for a public purpose as part of a law enforcement

violation.  *Id.* at *5; *accord Beierwaltes v. L'Office Federale De La Culture De La Confederation

Suisse*, 999 F.3d 808, 825 (2d Cir. 2021) (concluding that Swiss law enforcement's seizure of art

during an investigation was connected to the public interests of "[c]urtailing criminal activity"

and "stopping the illegal importation of cultural property" and thus not in violation of

international law).  Third, the Head is not in the DA's custody "in connection with a commercial

activity carried on in the United States by the foreign state" or an agent of the foreign state.

*Safani I*, 2021 WL 3292262, at *4 (quoting *Rukoro v. Fed. Republic of Ger.*, 976 F.3d 218, 224

(2d Cir. 2020)).[4]

The additional allegations in the Second Amendment Complaint do not warrant altering

the three conclusions from *Safani I*.  Safani newly asserts that the Manhattan DA seized the head

"solely and exclusively for the purpose of transferring the Head of Alexander to MiBACT," as

the "agent of or conduit for Defendants Italy and MiBACT."  (SAC ¶¶ 31, 33.)  To allege agency

---

[4] The "commercial activity" prong of the expropriation exception in subsection (a)(3) of 28 U.S.C. § 1605 is distinct from the "commercial activity" exception in subsection (a)(2).  *See Zappia*, 215 F.3d at 251 (analyzing an "action involv[ing] a commercial contract dispute" under the expropriation exception and noting that "the FSIA 'commercial activities' exception [did] not apply because no commercial acts or their effects were felt in the United States" (internal citation omitted)).

here, Safani must allege that the DA was "subject to [the] control" of Italy and/or MiBACT. *Safani I*, 2021 WL 3292262, at \*4 (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003)).  However, consistent with my prior holding, the Second Amended Complaint contains "no evidence that Italy controlled the actions of the DA's office."  *Safani I*, 2021 WL 3292262, at \*4.  Further, Safani makes no effort to supply additional allegations relating to violation of international law or to commercial activity.  In short, to the extent Safani attempts to invoke FSIA's expropriation exception in the Second Amended Complaint, I find its amendment futile.  *See Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

### 5.  FSIA's Tortious Activity Exception Does Not Apply

Safani's attempt to invoke FSIA's tortious activity exception for a second time also fails. The statute permits a court to exercise "jurisdiction over foreign sovereigns where the plaintiff seeks money damages 'for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of [the] foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.'"  *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (quoting 28 U.S.C. § 1605(a)(5)) (emphasis omitted).  I previously concluded that Safani could not invoke the tortious activity exception because the First Amended Complaint did not allege that Italy committed a tort, and because—to the extent Italy is accountable for the DA's actions—the DA's seizure of the Head was an exercise of its prosecutorial discretion.  *Safani I*, 2021 WL 3292262, at \*6.

Safani's only new allegation related to this issue is that Italy and MiBACT "knowingly and intentionally ma[de] a false claim to [the DA] that the Head of Alexander was stolen."  (SAC ¶ 75.)  For the tortious activity exception to apply, however, "the 'entire tort' must be committed in the United States."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 116–17 (2d Cir.

2013) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989)). Safani, perhaps to preempt the application of this rule, alleges that Italy and MiBACT committed "tortious acts occurring entirely in the United States[.]"  (SAC ¶ 10.)  This is a "legal conclusion," not a factual allegation that can sustain a motion to dismiss.  *Iqbal*, 556 U.S. at 678. And Safani's factual allegations belie this claim, since the Second Amended Complaint asserts that Italy and MiBACT made the allegedly false claim that the Head of Alexander was stolen "through telephonic and electronic communications into the United States."  (SAC ¶¶ 10, 75.)  If the communication came "into the United States," it must have originated outside the United States, presumably from a MiBACT employee in Italy.  (*Id.*)  Thus, whatever tort Safani seems to think Italy and MiBACT committed with their communication, it did not occur entirely in the United States.  *See Amerada Hess*, 488 U.S. at 441.  FSIA's tortious activity exception therefore does not apply.

As Defendants Italy and MiBACT are foreign states to which none of FSIA's exceptions apply, Italy and MiBACT enjoy sovereign immunity against this action and thus Italy's motion to dismiss is GRANTED, and Safani's claims against Italy and MiBACT are DISMISSED.

### B.  *The Manhattan DA's Motion to Dismiss*

The Manhattan DA's motion to dismiss raises several grounds on which it argues Safani's claims against it must be dismissed.  Because I have dismissed Italy and MiBACT, the only remaining grounds for federal jurisdiction of this case are the claims, asserted under 42 U.S.C. § 1983, that the DA violated Safani's Fourth and Fourteenth Amendment rights.[5]  I therefore begin my analysis of the DA's motion with whether dismissal of the federal claims is warranted.

---

[5] Safani invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, in the jurisdiction section of the Second Amended Complaint, (SAC ¶ 1), but "the Declaratory Judgment Act does not provide an independent basis for jurisdiction; jurisdiction must be founded separately on either federal question or diversity."  *Zyburo v. Cont'l Cas. Co.*, 60 F. Supp. 3d 531, 532 (S.D.N.Y. 2014).

Before proceeding, I note that Safani attempts to clarify the somewhat opaque nature of its federal claims in its opposition to the DA's motion to dismiss.  (*See* Opp'n.)  Safani asserts that its Fourth Amendment Claim relates to the seizure of the Head, and that the seizure is an "official capacity action" in that the DA maintains a "policy" to obtain search warrants lacking probable cause, "in blind faith reliance on countries like Italy," to seize artifacts after receiving "unsupported claims" they are stolen.  (*Id*. at 12.)[6]  Its Fourteenth Amendment due process claim relates to the seizure and the subsequent state-court proceedings—that the DA effectuated "an unlawful taking without just compensation" by seizing the Head and then filing a Turnover Application to return the Head to Italy.  (*Id*. at 14–15.)  Safani alleges the DA took these actions knowing that the state court handling the Turnover proceedings would not have jurisdiction to determine the ownership of the Head or to order just compensation.  (*Id*.)  For both claims, Safani seeks the following relief:  (a) a declaratory judgment that the seizure and Turnover proceedings violated the Constitution; (b) an injunction requiring the head to be kept in New York until it is returned to Safani; (c) an injunction against the state-court proceedings; and (d) an order that the Head be returned to Safani "as the rightful owner."  (SAC at 30.)

### 1. Standing

I first address the DA's contention that subject-matter jurisdiction is lacking because Safani does not have Article III standing to bring claims against the DA.  (*See* MTD at 18–21.)  For a plaintiff to have Article III standing, he "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*

---

[6] Although Plaintiff makes these characterizations in its opposition brief, the words "policy" or "custom" do not appear in the Second Amended Complaint, nor does Plaintiff make any reference to *Monell* liability.  (*See generally* SAC).

*LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The plaintiff "bear[s] the burden of demonstrating . . . standing," and "must demonstrate standing for each claim . . . and for each form of relief that" is sought.  *Id.* at 430–31.

Safani does not have Article III standing to press its claims against the Manhattan DA. Safani does not seek monetary damages from the Manhattan DA, it seeks a declaration that the DA's seizure and initiation of Turnover proceedings violated the Constitution, and an injunction ordering the return of the Head of Alexander.  Injunctive relief, by definition, only applies prospectively.  The Supreme Court has explained that "for declaratory or injunctive relief, 'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.'"  *Minsky v. Kelley*, 240 F. App'x 920, 921 (2d Cir. 2007) (summary order) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).  Past wrongs can only support injunctive relief as "evidence bearing on 'whether there is a real and immediate threat of repeated injury.'"  *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  A plaintiff may have standing to obtain injunctive relief, however, if he alleges "continuing, present adverse effects" of a past wrong.  *O'Shea*, 414 U.S. at 495–96; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) ("If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm.").

Many of the allegedly unconstitutional actions Safani charges the DA with—the seizure and initiation of Turnover proceedings—occurred in the past; they are not present injuries-in-fact that are sufficient to confer standing for declaratory or injunctive relief.  In other words, for the federal claims based on the DA's allegedly unconstitutional seizure and initiation of Turnover

proceedings, the only injunctive relief that Safani could seek is an order prohibiting the DA from unconstitutionally seizing its property and initiating Turnover proceedings in the future. *Cf. Krimstock v. Kelly*, 506 F. Supp. 2d 249, 251–53 (S.D.N.Y. 2007) (discussing procedural safeguards to vehicle forfeiture proceedings obtained as equitable relief on a claim that New York City's asset forfeiture program was unconstitutional).[7]  Plaintiff seeks no such relief here.[8]

Safani does seem to assert a present injury—the current deprivation of its right to possess the Head of Alexander.  This allegation does not support standing, however, because it is not "fairly traceable" to—*i.e.*, not caused by—the DA's allegedly unconstitutional conduct. *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (alterations adopted).  Although the complaint alleges that the Manhattan DA "maintains custody of the Head of Alexander" and "is holding it exclusively for the purpose of fulfilling his agenda of sending it to Italy," (SAC ¶ 39), the Second Amended Complaint also alleges that the DA "obtained a warrant for the seizure of the Head of Alexander from Safani," (*id.* ¶ 28).[9]  Under New York Criminal Procedure Law § 690.55, "property seized pursuant to a search warrant technically remains in the custody of the court, and the District Attorney . . . possesses the property only as an officer of the court, subject to the court's direction and disposition." *United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720, 725 (S.D.N.Y.) (quoting *In re Documents*

---

[7] The Supreme Court's decision in *Culley v. Marshall*, 601 U.S. 377 (2024) abrogated *Krimstock* on unrelated grounds.

[8] Even if Plaintiff had sought such relief, it is unclear how it would establish there is a threat "sufficiently real and immediate to show an existing controversy" based on the allegations in the Second Amended Complaint. *See Lyons*, 461 U.S. at 103 (quoting *O'Shea*, 414 U.S. at 496).  Further, "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431.  So even if Plaintiff established standing to seek an injunction against future actions of the DA, that case or controversy would not entitle him to a remedy for the DA's past actions, including the seizure of the Head. *See infra* at 17–20.

[9] On a motion to dismiss, I need not accept "conclusions of law or unwarranted deductions of fact" as true, *Amusement Industry, Inc. v. Stern*, 786 F. Supp. 2d 758, 770 (S.D.N.Y. 2011) (citation omitted), and on a motion to dismiss for lack of subject-matter jurisdiction, I "may refer to evidence outside the pleadings."  *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

*Seized Pursuant to a Search Warrant*, 478 N.Y.S.2d 490, 494 (N.Y. Sup. Ct. 1984)); *see also Vaher v. Town of Orangetown, N.Y.*, 133 F. Supp. 3d 574, 606–07 (S.D.N.Y. 2015) (explaining statute and collecting cases).  Accordingly, the New York County Supreme Court's order that the DA maintain custody of the Head noted that the DA was "required" to do so "until ownership is determined."  (Doc. 83-25 at 51.)[10]

The operation of New York law means that, for its federal claims, Safani does not have standing to obtain the relief it seeks from the Manhattan DA.  Under the law, "disposition of the [Head] is subject only to orders of the state court"; the DA maintains custody only on the direction of the state court and has no independent discretion to order the release of the Head.  *$490,920*, 944 F. Supp. at 725.  Put another way, the reason Safani is not currently in possession of the Head of Alexander is that New York's statutory warrant-and-seizure scheme requires the state court to maintain control over the Head as seized property.  *Cf. Pfizer Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-CV-4920, 2021 WL 4523676, at *10 (S.D.N.Y. Sept. 30, 2021), *aff'd sub nom. Pfizer, Inc v. U.S. Dep't of Health & Hum. Servs.*, 42 F.4th 67 (2d Cir. 2022) (explaining that plaintiff's alleged injury was caused by the "structure of the [statutory] scheme" at issue, not the challenged governmental conduct).  A finding that the Manhattan DA violated the Constitution by seizing the Head without probable cause and without due process would not change the fact that only the state court can order the disposition of the Head.  Without a causal link between the Manhattan DA's allegedly unconstitutional actions and the relief Safani seeks for them, the gallery does not have Article III standing, and this Court lacks subject-matter jurisdiction.

---

[10] In a similar New York County Supreme Court proceeding, the court ordered the DA to maintain possession of seized artwork pursuant to N.Y. C.P.L. § 690.55 until the parties obtained an ownership determination from "a more appropriate forum, such as a court with civil jurisdiction."  (Doc. 83-13 at 47–49.)

In response, Safani cites only *Santander Consumer USA, Inc. v. Cnty. of Suffolk*, No. 20-CV-2656, 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021).  In *Santander*, the plaintiff held a lien on a vehicle and alleged that—pursuant to its policy—the defendant municipality seized the vehicle, maintained full possession "after the initial justification for the seizure expired," and then failed to "provide Plaintiff or other interested parties with notice and/or a procedure to recover the Subject Vehicles or to challenge the Deprivations."  *Id.* at *1–2.  The court determined the plaintiff had standing to seek declaratory and injunctive relief against the defendant since the municipality "continue[d] to retain and detain the [subject] vehicle."  *Id.* at *14.  Here, by contrast, the Manhattan DA seized the Head pursuant to a warrant, and maintains custody over the statue pursuant to the New York County Supreme Court's order.  Unlike Safani, the plaintiff in *Santander* could demonstrate that the defendant controlled the subject vehicle— that the defendant's exercise of its discretion caused the continuing deprivation of the plaintiff's property rights.  *Id.* at *1–2.  Plaintiff's citation thus fails to cure its traceability problem.

By emphasizing the fact that the state court stayed its proceedings so that this Court could adjudicate ownership of the Head,[11] Safani also seems to argue that if I determine the DA violated the Constitution, I will also have determined that he is the lawful owner of the head of Alexander, and thus Safani will obtain the relief it seeks because the state court will order the Head's return.  (Opp'n Br. at 4–5; *see also* Doc. 83-25 at 51–52.)  But that blurs the distinction between Count I, which seeks a declaratory judgment of ownership, and Counts V and VI, which allege violations of Safani's Fourth and Fourteenth Amendment rights.  Assuming Safani has standing to assert Count I against the DA, the gallery cannot use that claim to bootstrap standing

---

[11] Safani raises this argument in opposition to a different ground of the DA's motion to dismiss, but I find it relevant here.

on Counts V and VI.  The Supreme Court has explained that "standing is not dispensed in gross."

*TransUnion*, 594 U.S. at 431.  Safani therefore "must demonstrate standing for each claim" it

presses and "for each form of relief that [it] seek[s.]"  *Id.*  A finding that the Manhattan DA acted

unconstitutionally does not equate to a finding that Safani is the lawful owner of the Head of

Alexander.

In short, because Safani seeks only declaratory and injunctive relief against the

Manhattan DA, and because the DA does not control the New York County Supreme Court's

disposition of the Head of Alexander, the gallery lacks Article III standing to pursue its federal

claims.  Therefore, the DA's motion to dismiss for lack of subject-matter jurisdiction is

GRANTED, and I dismiss Counts V and VI.[12]

## 2.  Supplemental Jurisdiction

Having dismissed Safani's federal claims against the DA, the only claims that remain are

Safani's state-law claims for a declaratory judgment, conversion, and replevin.  Original

jurisdiction over these claims is lacking, and I have discretion under 28 U.S.C. § 1367(c)(3) to

decline to exercise supplemental jurisdiction over the remaining claims.  In considering whether

to exercise supplemental jurisdiction over the remaining claims, I "must consider 'the values of

---

[12] Because I find Plaintiff has not demonstrated Article III standing, I "must dismiss the case on that ground, and it is unnecessary to intimate a view as to the merits of the claim."  *Matter of Appointment of Indep. Couns.*, 766 F.2d 70, 75 (2d Cir. 1985) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 n.6 (1973)).

I note, however, that it appears Plaintiff's federal claims—Plaintiff's claims under § 1983 that the DA violated Plaintiff's Fourth and Fourteenth Amendment rights—would also fail on the merits.  Plaintiff asserts the constitutional claims against the DA "in his official capacity," disclaiming any personal capacity theory.  (SAC at 2; *see also* Opp'n at 12.)  There are at least two deficiencies with an official capacity suit here.  First, the DA enjoys Eleventh Amendment sovereign immunity against claims based on his actions "as a prosecutor."  *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017)  (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)).  Second, to the extent Plaintiff wishes to advance an official capacity theory that the DA's "policy or custom" was "the moving force of the [alleged] constitutional violation[s], *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Second Amended Complaint challenges only the DA's "actions in this case," (SAC ¶ 101).  It does not use the words "policy," "practice," or "custom" in relation to the DA and does not otherwise sufficiently "establish a pattern or practice of similar constitutional violations."  *D'Alessandro*, 713 F. App'x at 10.

judicial economy, convenience, fairness, and comity.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, judicial economy weighs in favor of dismissal—the case is still in a "relatively early stage," as no discovery has taken place and the case is "not yet ready for trail." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). Convenience and fairness also weigh in favor of dismissal. Safani asserts that I should retain jurisdiction over the state-law claims "as long as federal claims remain against any defendant in the case," (Opp'n Br. at 16), but no party argues I should retain jurisdiction if, as here, I have dismissed the federal claims, (*see also* MTD at 34). Finally, although "the state-law issues [are] not so groundbreaking as to preclude the exercise of jurisdiction" under 28 U.S.C. § 1367(a)(1), *Korshnyi*, 771 F.3d at 102, the consideration of comity also weighs in favor of dismissal, because dismissal avoids "needless" federal-court "decisions of state law," *Valencia*, 316 F.3d at 305 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Thus, I decline to exercise supplemental jurisdiction over the remaining state-law claims, and they are DISMISSED without prejudice.

## V.    Conclusion

For the foregoing reasons, it is hereby:

ORDERED that, considering Italy's memorandum at Document 53 as a motion to dismiss on FSIA grounds, the motion is GRANTED, and Defendants Italy and MiBACT are DISMISSED from this action. Accordingly, Count IV is also DISMISSED.

IT IS FURTHER ORDERED that the Manhattan DA's motion to dismiss at Document 82 is GRANTED, as this Court lacks subject-matter jurisdiction over the federal claims (Counts V

and VI), and pursuant to 28 U.S.C. § 1367(c)(3) I decline to exercise supplemental jurisdiction over the remaining state claims (Counts I, II, and III).

The Clerk of Court is respectfully directed to terminate the pending motion at Document 82 and to close the case.

SO ORDERED.

Dated: January 28, 2025
        New York, New York

Vernon S. Broderick
United States District Judge